[S.F. No. 24773. Nov. 4, 1985.]

EUGENE A. BAMBIC, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Eugene A. Bambic, in pro. per., and Kenneth A. Kocourek for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Ellen A. Pansky, Antonia Darling and Marsha McLean-Utley for Respondent.

## OPINION

**THE COURT.**\*—The Review Department of the State Bar Court has unanimously recommended that petitioner, Eugene A. Bambic, be disbarred for numerous acts of alleged misconduct. This court concludes that disbarment is warranted.

### I.

On October 1, 1982, in two notices to show cause, petitioner was charged with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, and 6103), committing acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106), and wilfully violating rules 2-111, 6-101, 6-102, 7-103 and 8-101 of the Rules of Professional Conduct.[1] Petitioner did not file an answer to either notice.

Thirty-seven counts of unprofessional conduct were alleged. Seven of those were dismissed for insufficient evidence or to facilitate prompt resolution of the entire proceeding. The hearing panel unanimously found the remaining 30 allegations to be true and recommended disbarment.[2] The review department unanimously adopted the hearing panel's findings.

---

\*Before Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., Lucas, J., and Yip, J.†

[1] Unless otherwise noted, all statutory references are to the Business and Professions Code. All references to rules are to the Rules of Professional Conduct.

[2] The present matter involves two separate disciplinary proceedings (L.A. 3643 and L.A. 3644), each of which resulted in a hearing panel recommendation of disbarment. The proceedings were consolidated before the review department.

†Assigned by the Chairperson of the Judicial Council.

## II.

Petitioner was admitted to the practice of law on June 21, 1966. He has no prior record of discipline.[3]

The 30 incidents of misconduct involved 41 clients and occurred over a 3-year period, from 1979 to 1982. The misconduct falls into five general categories.

The first category involves petitioner's mishandling of client funds. In 19 separate instances petitioner misappropriated client funds in amounts varying from $300 to $60,000.[4] (Rule 8-101; §§ 6103, 6106.) Also, in many of these cases, petitioner issued checks to his clients which were returned for insufficient funds.[5]

In addition, in a majority of these cases petitioner settled his clients' claims without their knowledge or consent. In 12 matters petitioner willfully failed to promptly advise clients of his receipt of settlement funds. (Rule 8-101.) In seven matters petitioner willfully failed to account for or to deposit in his client trust account funds which he had received. (Rule 8-101; §§ 6103, 6106.) Finally, in 10 matters petitioner willfully failed to promptly pay out funds belonging to his clients. (Rule 8-101; §§ 6103, 6106.)

The second category involves 18 instances in which petitioner forged or caused to be forged his clients' signatures or submitted forged documents to third parties. (§§ 6103, 6106.) The forged signatures appeared on settlement agreements and checks, and release forms. In several matters petitioner also willfully filed motions for dismissal without his clients' knowledge or consent.

The third category involves petitioner's failure to act competently. In six matters petitioner willfully failed to use reasonable diligence and his best

---

[3]Petitioner is currently on interim suspension as a result of this court's orders in two conviction proceedings. (Bar Misc. Nos. 4616, 4690.) Those orders resulted from petitioner's convictions, in separate prosecutions, of two counts of concealing a material fact (18 U.S.C. § 1001) and nine counts of grand theft (Pen. Code, § 487). In both cases petitioner pled guilty. The federal conviction arose out of petitioner's submission of two settlement agreements containing his client's forged signature in litigation against the United States Navy. These acts are included within the findings of fact made in the instant proceeding. (See *post,* at p. 318.) The grand theft convictions involved forgery of client releases and settlement checks and misappropriation of client funds. Two of these matters are included within the present findings.

[4]Although the total sum misappropriated is unclear, it approximates $150,000. Petitioner testified that the amount owed his clients is between $150,000 and $160,000.

[5]An independent review of the record discloses 20 such checks issued by petitioner.

judgment in protecting his clients' interests. (Rule 6-101; §§ 6103, 6106.) Also, in six cases petitioner willfully failed to communicate with his clients regarding the status of their cases. In one such matter petitioner willfully failed to perform all services for which he was retained.

The fourth category concerns rule violations regarding petitioner's withdrawal from employment. In two cases petitioner willfully failed to refund the unearned portion of advanced fees when he withdrew from employment. (Rule 2-111(A)(3).) Also, petitioner willfully failed to take reasonable steps to avoid prejudice to his client prior to filing a motion to be relieved as counsel. (Rule 2-111(A)(2).)

The final category concerns violations of several miscellaneous disciplinary provisions. Petitioner willfully attempted to limit his liability to a client for his malpractice. (Rule 6-102.) Further, he willfully communicated with a party represented by counsel about a subject in controversy without counsel's consent. (Rule 7-103; §§ 6103, 6106.) Finally, in several matters petitioner made material misrepresentations to his clients.

Petitioner does not challenge the hearing panel's findings. In any event, an independent review of the record reveals that all of the findings are well supported by the evidence.

The following examples illustrate the type of misconduct in which petitioner engaged. In 1977, Rose K. retained petitioner to represent her in a wrongful death action against the United States Navy. Without her knowledge or consent, petitioner eventually negotiated a $60,000 settlement. Petitioner gave his secretary an exemplar of Rose K.'s signature and directed her to sign Ms. K.'s name to the release. Petitioner then submitted the release to the Navy. After receiving a $60,000 settlement check from the Navy, petitioner failed to inform his client that he had received funds on her behalf. He then cashed the check and used the $60,000 for his own purposes. Petitioner never gave Ms. K. any of the money from the settlement proceeds. He also submitted a second release to the Navy containing his client's forged signature.

In 1976, in another wrongful death action, petitioner was retained by Mr. C. and his four minor children. Petitioner settled the case for $57,499 with Mr. C.'s approval. Thereafter, petitioner forged or caused to be forged his clients' signatures on the settlement checks. Mr. C. and his children received only one penny of the settlement proceeds.[6]

---

[6]The penny was delivered to Mr. C. at the settlement conference to even the settlement out to $57,499 instead of $57,498.99.

In a third matter, Mr. B. retained petitioner to represent him in a medical malpractice suit. In January of 1981, following an arbitration hearing, Mr. B. was awarded $50,000. Within a few days of the award, petitioner had a messenger pick up the settlement check from the defense attorney. Petitioner signed the check, had his client's signature forged, and cashed it a few days later. Thereafter, Mr. B. learned through a doctor involved in the case that the case had been settled. When he met with petitioner a few weeks later, he was informed that the arbitrators would not make a decision until March of 1981. To date Mr. B. has received none of the settlement proceeds.

The pattern in most of these cases is clear. The client would retain petitioner. Petitioner would settle the case, usually without his client's knowledge or consent. Petitioner would forge or cause to be forged his client's signature on the settlement checks. He would then misappropriate most if not all of his client's proceeds. And in many cases, when petitioner issued a check to his client, the check would be returned because of insufficient funds.

In other matters, the client would retain petitioner and petitioner would fail to perform services for him. Attempts to contact petitioner concerning the status of his case would be unsuccessful.

### III.

Petitioner first contends he was denied due process when the hearing panel denied his request to continue the hearings to permit his newly retained counsel to familiarize himself with petitioner's case. In order to properly analyze this claim, a review of the procedural history of the present proceeding is necessary.

In October of 1982, copies of the two notices to show cause which instituted the disciplinary proceedings (see *ante,* fn. 2) were served on an attorney authorized by petitioner to accept service. Approximately three months later, at the first hearing in L.A. 3643, petitioner appeared with counsel, Arnold Stone.[7] At the hearing, Stone requested a continuance. The hearing panel continued the matter two weeks to provide petitioner an opportunity to submit a written motion for a continuance.[8] Petitioner did not file a motion and the hearing proceeded as scheduled. Petitioner did not appear.

---

[7] Stone was apparently the third attorney representing petitioner in the State Bar proceedings.

[8] A few days after the continuance was granted, Stone informed the State Bar examiner that he was no longer representing petitioner.

The hearings continued through March of 1983 and concluded on May 4th. Petitioner did not appear at any of those hearings. At the May 4th hearing, petitioner was represented by different counsel, Kenneth Kocourek.

In February of 1983, when the hearing in L.A. 3644 commenced, petitioner appeared without counsel.[9] He then failed to appear at the next two scheduled hearings. On April 4th, the last day the State Bar presented its evidence, petitioner appeared with newly retained counsel, Kenneth Kocourek.[10] At that hearing petitioner moved for a two- or three-week continuance to permit Kocourek to familiarize himself with petitioner's case. The hearing panel denied the motion for the purpose of presenting a defense but granted it for the purpose of presenting mitigating evidence.

■ "Continuances of disciplinary hearings are disfavored, and a request for continuance must be supported by a factual showing of good cause. (Rule F.3, State Bar Court Rules.) . . . A strong rule against unnecessary delay is essential to ensure that the public will be protected by the prompt discipline of erring practitioners. [¶] Moreover, . . . State Bar proceedings cannot be compared to criminal actions, and criminal procedural safeguards do not apply. Generally, an accused attorney has the obligation to obtain representation if he wants it, to appear at the hearing, and to present evidence. The hearing may proceed despite his voluntary absence, and his failure to participate is not grounds for a rehearing to present additional evidence. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].)" (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185]; see also *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].)

■ The record reveals that petitioner had ample opportunity during the six months in which the formal disciplinary proceedings occurred in which to prepare and present a defense. Petitioner repeatedly failed to appear at the hearings and to present evidence. In addition, although the orders to show cause in this case advised petitioner that any request for a continuance should be supported by a showing of good cause, no such showing was made. Finally, when provided an opportunity to submit a written motion for a continuance, petitioner failed to do so.

In view of these facts, this court concludes that petitioner was not deprived of due process by the denial of his continuance motion.

---

[9]At that hearing petitioner moved for a continuance on the grounds that the State Bar should await the conclusion of the federal prosecution and permit petitioner to retain counsel. This motion was denied. Petitioner does not challenge this ruling.

[10]Kocourek was retained the week prior to the April 4th hearing.

IV.

Petitioner contends that disbarment is not warranted in view of the mitigating evidence contained in the record which, he asserts, the hearing panel failed to consider.

Petitioner offered the following evidence in mitigation. He is an alcoholic and has "enjoyed" alcohol continuously since 1965 or 1966. He first realized he was an alcoholic in February of 1983 when he went to a psychiatrist "to find out why [he] had ruined [his] life." However, he no longer drinks alcohol and attends Alcoholics Anonymous (A.A.) meetings once a week. He concedes that his drinking interfered with his practice of law.

Petitioner pled guilty to criminal charges of fraud and grand theft in federal and state court in 1983. (See *ante,* fn. 3.) He was sentenced to four years in federal prison with his state sentence ordered to run concurrently.

Petitioner considers himself "a disgrace to the law," but emphasizes his love for the profession and his desire to practice law again. He wants to "make good all the things [he's] done wrong."

Over the last 20 years, petitioner's domestic life has been in a "state of turmoil." After his first wife suffered a nervous breakdown, he took charge of raising their five children.[11] At the time of the hearings, he was going through a divorce from his third wife.

In the State Bar proceedings, petitioner denied personally taking any of his clients' money.[12] He asserted that about $150,000 was taken by people in his office. However, he did admit that he was "totally responsible for everything that happened . . . ."

Several other witnesses testified on petitioner's behalf. Dr. Burton Chertock, a psychiatrist who has been treating petitioner for alcoholism, testified that petitioner has an excellent chance of recovery based on his continued attendance at A.A. meetings.

Petitioner's brother-in-law testified that petitioner's drinking had increased over the last five years, but that in the last two months he had seen

---

[11]His first wife had the breakdown in 1964. At the time of the State Bar proceedings in 1983, petitioner's youngest child was 19 years old.

[12]This denial conflicts with statements he made to the judge in the federal court prosecution. There, petitioner admitted that he received a $60,000 check in settlement of one of his client's claims, placed it in his client trust account, spent the money for his own personal purposes and failed to give his client any of it.

petitioner consume only one drink. He also characterized petitioner's domestic life for the past 17 years as "extremely stressful."

Lastly, an attorney who attended A.A. meetings with petitioner testified that petitioner first attended the meetings in late February of 1983 and missed only one meeting during the next two months.[13]

Petitioner asserts that the hearing panel ignored the following factors in mitigation: (1) the lack of a prior record of discipline, (2) domestic problems, (3) petitioner's alcoholism and rehabilitation efforts, (4) the ignominy of his conviction, and (5) the "high degree of media coverage and publicity" concerning the conviction. With the exception of factor (2), the record belies petitioner's claim.[14]

The hearing panel made three findings in mitigation: that petitioner has no prior record of discipline, that petitioner has voluntarily participated in a program for recovering alcoholics since February of 1983, and that petitioner was sentenced to a four-year concurrent sentence for his federal and state convictions.[15] Based on these findings, it is clear that the hearing panel considered factors (1), (3) and (4) noted above.[16]

▇▇▇▇ Petitioner did, however, present uncontradicted evidence concerning his domestic problems. Since domestic difficulties may be considered in mitigation of discipline, the hearing panel should have included this factor in its findings. (See *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111

---

[13]Petitioner also introduced two letters into evidence, one from another attorney whom he met at A.A. meetings and another from his former secretary. The attorney attested to petitioner's "faithful" attendance at the meetings and believed that petitioner was sincere in his rehabilitation efforts. Petitioner's former secretary of 12 years outlined his personal and professional problems. She related that petitioner had worked for a well-known law firm for nine years but was eventually voted out by the partner controlling the majority interest in the firm. Petitioner was then forced to open his own practice and, as a result, had substantial financial difficulties for several years.

Petitioner apparently gave his secretary responsibility for managing his office. After the secretary retired, petitioner was left with this responsibility. It was during this period that the acts of misconduct occurred. The secretary related how petitioner raised his children alone and is very family-oriented. She also stated that petitioner is deeply religious, unselfish, kind, loyal and sincere.

[14]Petitioner also baldly asserts that the denial of his request for a continuance should constitute an additional factor in mitigation just as a delay by the State Bar in prosecuting a case is a mitigating factor. The analogy is unpersuasive.

[15]Petitioner was released from prison in May of 1985.

[16]The record contains no evidence to support the claim that a high degree of media coverage and publicity was generated by petitioner's conviction. With the exception of an obscure reference to the fact that the attorney who attended A.A. meetings with petitioner had read of petitioner's problems in the Los Angeles Times and The Daily Journal, the record is silent on the subject.

Cal.Rptr. 905, 518 P.2d 337]; *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230].)

However, the State Bar's failure to do so does not undercut its recommendation of disbarment. ■ "Although this court exercises its independent judgment in determining the appropriate discipline, it gives great weight to the disciplinary recommendation of the State Bar. [Citation.] It is axiomatic that petitioner bears the burden of demonstrating that the State Bar's recommendation is erroneous. [Citations.]" (*Smith* v. *State Bar* (1984) 37 Cal.3d 17, 25 [206 Cal.Rptr. 545, 687 P.2d 259].) Petitioner has failed to meet that burden.

It is well established that misappropriation is a serious offense involving moral turpitude. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 15 [206 Cal.Rptr. 373, 686 P.2d 1177]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 124 [202 Cal.Rptr. 349, 680 P.2d 82].) Moreover, it merits severe discipline since it is "a gross violation of professional ethics which undermines the public's confidence in the legal profession." (*Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 192-193 [181 Cal.Rptr. 903, 643 P.2d 486]; *Alberton, supra,* 37 Cal.3d at p. 15.) ■ This court has repeatedly held that the misappropriation of client funds warrants disbarment in the absence of strong mitigating circumstances. (*Rogers* v. *State Bar* (1980) 28 Cal.3d 654, 658 [170 Cal.Rptr. 482, 620 P.2d 1030]; *Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 747) In addition, where the attorney has been convicted of grand theft as a result of his misappropriation, disbarment is the usual sanction. (*Ambrose, supra,* 31 Cal.3d at p. 193; *In re Wright* (1973) 10 Cal.3d 374, 376 [110 Cal.Rptr. 348, 515 P.2d 292].)

■ This is not a case of one or two isolated instances of misappropriation. The misappropriations here were of an aggravated nature, involving client funds in 19 separate matters, spanning a 3-year period and involving large sums of money. This conduct clearly warrants disbarment. (See *Ambrose, supra,* 31 Cal.3d at p. 193; *In re Lyons* (1975) 15 Cal.3d 322, 326 [124 Cal.Rptr. 171, 540 P.2d 11].)

Moreover, petitioner's acts of misappropriation were accompanied by other dishonest acts which warrant severe discipline. In most of the cases, petitioner willfully settled his clients' claims without their knowledge or consent. He then either forged or caused to be forged his clients' signatures on settlement checks and negotiated the checks without his clients' knowledge. (See *Ambrose, supra,* 31 Cal.3d at p. 193; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 798 [94 Cal.Rptr. 825, 484 P.2d 993].) In several matters, petitioner lied to his clients about the status of their settlement funds. Such deliberate deceit constitutes serious misconduct. (*Ambrose, su-*

*pra,* 31 Cal.3d at p. 193; *Mack* v. *State Bar* (1970) 2 Cal.3d 440, 445 [85 Cal.Rptr. 625, 467 P.2d 225].)

In addition, petitioner issued numerous checks with insufficient funds in his account. Such conduct "manifests an abiding disregard of ' "the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice" ' [Citation.]" *(Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 577 [119 Cal.Rptr. 335, 531 P.2d 1119].)

Petitioner also failed to act competently in a number of other matters and failed to communicate with his clients. The former by itself warrants discipline. *(Alberton, supra,* 37 Cal.3d at p. 15.) ■ "[W]illful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of good faith and fiduciary duty owed by the attorney to his clients. [Citations.]" *(Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].) The failure to communicate with clients also warrants discipline. (See *Ambrose, supra,* 31 Cal.3d at p. 193.)

Finally, petitioner engaged in several other unprofessional acts warranting discipline, such as willfully failing to take reasonable steps to avoid prejudice to his client upon withdrawing from employment and communicating with a party represented by counsel without counsel's permission. (See *Chefsky* v. *State Bar, supra,* 36 Cal.3d 116; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; *Shalant* v. *State Bar* (1983) 33 Cal.3d 485, 490 [189 Cal.Rptr. 374, 658 P.2d 737].)

Where the offenses are "committed in concert, substantial discipline is warranted." *(Davis* v. *State Bar* (1983) 33 Cal.3d 231, 240-241 [188 Cal.Rptr. 441, 655 P.2d 1276].) Further, severe discipline is imposed when an attorney's disregard of his clients' interests is "habitual." *(Finch, supra,* 28 Cal.3d at p. 665.)

■ Petitioner's repeated unprofessional conduct manifests a complete disregard for his clients and undermines the public's confidence in the legal profession. Although petitioner points to several mitigating factors (see *ante,* at p. 322), the serious nature of his misconduct outweighs them.

*Ambrose, supra,* 31 Cal.3d 184 is illustrative. There, the attorney misappropriated tens of thousands of dollars in client funds, deliberately lied to clients, cashed clients' settlement drafts with knowledge that the endorsements were forged, failed to communicate with clients and perform services and repeatedly wrote checks without sufficient funds. Ambrose's mitigating

evidence was similar to that here: the absence of a prior disciplinary record, personal and family problems, alcoholism and rehabilitation efforts, and a conviction of grand theft. Despite these mitigating factors, this court ordered disbarment. "Because of the gravity of petitioner's misconduct, the public and profession will be insufficiently protected if he is merely suspended from the practice of law." (*Id.*, at p. 196.)

In many other disciplinary cases involving misappropriation, this court has ordered disbarment despite the presence of mitigating factors similar to those involved in the present proceeding. (See, e.g., *Tarver* v. *State Bar* (1984) 37 Cal.3d 122 [207 Cal.Rptr. 302, 688 P.2d 911] [alcoholism and rehabilitation efforts, death of first wife and injuries to children resulting from an accident, marital difficulties with second wife]; *Tomlinson* v. *State Bar, supra,* 13 Cal.3d 567 [severe financial problems, no prior disciplinary record, willingness to make restitution]; *Tardiff* v. *State Bar* (1971) 3 Cal.3d 903 [92 Cal.Rptr. 301, 479 P.2d 661] [severe financial pressures arising in part from the hospitalization of attorney's twin children after their birth]; see also *In re Vaughn* (1985) 38 Cal.3d 614 [213 Cal.Rptr. 583, 698 P.2d 651]; *Rimel* v. *State Bar* (1983) 34 Cal.3d 128 [192 Cal.Rptr. 866, 665 P.2d 956]; *In re Smith* (1967) 67 Cal.2d 460 [62 Cal.Rptr. 615, 432 P.2d 231]; *Resner* v. *State Bar* (1960) 53 Cal.2d 605 [2 Cal.Rptr. 461, 349 P.2d 67]; but see *In re Mudge* (1982) 33 Cal.3d 152 [187 Cal.Rptr. 779, 654 P.2d 1307].)

The words of this court in *Resner* v. *State Bar, supra,* 53 Cal.2d at pages 614-615 are relevant here: "The records here disclose an unrelenting indifference to the obligations of an attorney by deliberately . . . diverting his clients' funds to his own uses and purposes. The violation of the trust which both the individual client and the general public repose in an attorney in the handling of funds entrusted to him is a most grievous breach of professional ethics and morality. An attorney who is shown to have embarked on a course of conduct during which such breaches become commonplace is not entitled to be recommended to the public as a person worthy of trust, and accordingly not entitled to continue to practice law."

V.

The abundant evidence of petitioner's serious professional misconduct, adversely affecting more than 40 clients and spanning a 3-year period, amply supports the State Bar's recommendation of disbarment.

Accordingly, it is ordered that Eugene A. Bambic be disbarred from the practice of law and that his name be stricken from the roll of attorneys.[17] This order is effective 30 days after the filing of this opinion.

---

[17]Petitioner was ordered to comply with the requirements of rule 955 of the California Rules of Court when he was suspended from the practice of law as a result of this court's orders in the two conviction proceedings. (See *ante,* fn. 3.) For this reason, a rule 955 requirement is not included here.