[No. S001785. June 9, 1988.]

RICHARD HAWK, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Godfrey J. Tencer for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Lawrence C. Yee and Sherrie B. McLetchie for Respondent.

## OPINION

**THE COURT.\***—This is a proceeding to review the recommendation of the Review Department of the State Bar Court that petitioner Richard Hawk be suspended from the practice of law for four years, that execution of the suspension be stayed, and that he be placed on probation for four years on specified conditions, including six months' actual suspension.[1] The

---

\* Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Elkington (Norman), J.†

[1] The recommended conditions of probation are six months' actual suspension, obedience to all provisions of the State Bar Act and the Rules of Professional Conduct and filing of quarterly reports with the State Bar Court certifying compliance with these rules and provisions. For each period in which petitioner possesses client trust funds, his quarterly report must also contain a certificate from a certified public accountant or a public accountant certifying that he has maintained permanent accounting records distinguishing clients' funds and expenditures from his own, that he has maintained a "trust account" or a "client's funds account" at an in-state branch of a bank authorized to do business in California, that he has maintained a permanent record of all trust account transactions with monthly listings and balances for each client, and that he has maintained a permanent record showing all specifically identified property held in trust for clients. Petitioner must also maintain a current address with the State Bar Court, cooperate fully with a probation monitor referee, and promptly answer all inquiries from the State Bar regarding compliance with the terms of probation. The State Bar Court also recommends that petitioner be required to take and pass the Professional Responsibility Examination within one year from the effective date of our order, and that he be required to comply with the terms of rule 955 of the California Rules of Court.

---

† Associate Justice, Court of Appeal, First Appellate District, Division One, sitting under assignment by the Chairperson of the Judicial Council.

recommendation is based on a finding that petitioner violated rule 5-101 of the Rules of Professional Conduct (hereafter rule 5-101), which prohibits an attorney from acquiring an interest adverse to a client unless the terms are fully disclosed and fair and reasonable, and unless the client has consented in writing after having had an opportunity to consult independent counsel.[2] The review department also concluded that petitioner had committed an act involving moral turpitude and dishonesty, in violation of Business and Professions Code section 6106.[3]

The case presents a question of first impression: whether an attorney who takes a promissory note secured by a deed of trust in real property to secure payment of a fee must comply with rule 5-101. We conclude that rule 5-101 does apply to the taking of such a security interest.

## FACTS

Petitioner was admitted to the practice of law in 1957. In 1975 he was publicly reproved for gross negligence in the handling of a client's trust account. In 1978 he was suspended from the practice of law for two months after a conviction for failing to file federal income tax returns.

The present disciplinary proceedings concern petitioner's representation of Mr. James Mederos, specifically the fee agreement with Mr. and Mrs. Mederos. In December 1979 petitioner agreed to represent Mr. Mederos through trial for a fee of $15,000. The Mederoses did not have the amount in cash, so petitioner requested that they give him a promissory note se-

---

[2] Rule 5-101 provides: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

[3] The notice to show cause alleged that petitioner had violated his oath and duty as an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103) and wilfully violated Rules of Professional Conduct, rules 2-107 (illegal or unconscionable fee), 2-111(A)(2) and (3) (protecting client before withdrawing from employment, refund unearned fees) and 6-101(A)(2) (failure to perform legal services competently). The hearing panel found petitioner culpable only of violating his oath of office as an attorney and violating rule 5-101. It found insufficient evidence that petitioner had committed an act of moral turpitude, violated his duties as an attorney, or failed to refund money after withdrawing. It found petitioner had not abandoned his client or performed incompetently.

cured by a deed of trust with a power of sale on real property which they owned. Mrs. Mederos testified that petitioner told her that ". . . it was no big thing to sign the note, that he would hold the note until [she] could pay him payments or until the property was sold." They agreed to sign the standard form note secured by a deed of trust which petitioner presented to them. By its terms, the note was payable on demand. Petitioner prepared the note without the amount of indebtedness filled in. He informed Mr. Mederos that the fee would be $15,000, and both Mr. and Mrs. Mederos executed the note. Then in only Mrs. Mederos's presence, he filled in the amount of $20,000. When she objected, he informed her that the additional $5,000 was an advance against litigation costs. Petitioner then accompanied Mrs. Mederos to a real estate office where she listed the property for sale.

As to this transaction, the hearing panel of the State Bar Court found that petitioner did not fully disclose and transmit in writing to the clients the terms of the security arrangement; that he did not advise and give them the opportunity to have the transaction reviewed by independent counsel; and that he did not provide them with copies of the promissory note and deed of trust. The hearing panel found that the clients did not understand how petitioner was to secure his fee or that he could foreclose on their property under the agreement.

In May 1980, petitioner acquired a second promissory note from the Mederoses secured by another deed of trust on the same property, this time for $10,000. This was to pay for additional services required by the Mederoses. Again, the hearing panel found that petitioner failed to disclose fully in writing the terms of the security arrangement, failed to give the clients an opportunity to consult independent counsel, and failed to provide them with a copy of the security agreement.

The Mederoses understood from petitioner that the fee eventually would be paid from the proceeds of their sale of the property. Instead of waiting for the clients to complete a sale, however, petitioner immediately assigned both notes and deeds of trust, and the assignee made a demand on the Mederoses. They had been unable to sell the property. They offered petitioner another piece of property to satisfy the debt. Petitioner said that he would discuss this with his partner, but they testified that he never responded to the offer again. The assignee assigned the note to a third party, who foreclosed.

The hearing panel concluded that petitioner had violated rule 5-101. It found the terms of the transactions fair and reasonable, but found that the terms were not fully disclosed in language that the clients could understand. It found that the petitioner failed to provide a written explanation, and that

the clients actually did not understand the legal significance of the agreement. The review department found, in addition, that the failure to comply with rule 5-101 and the modification of the first promissory note without the consent of the clients were acts of moral turpitude in violation of Business and Professions Code section 6106. The hearing panel recommended a one-year suspension with actual suspension of ninety days. Both petitioner and the examiner for the State Bar sought review. The review department increased the recommended discipline to four years' suspension and six months' actual suspension on the grounds that petitioner's acts involved moral turpitude and that he had more than one prior discipline involving money matters.

Petitioner first contends that he was denied due process when the hearing panel conducted hearings on this matter in his absence, and when the panel refused to grant him a continuance so that he could be present, or to allow him to put on evidence on the merits at the hearing on discipline. He asks us to set aside his "defaults" under Code of Civil Procedure section 473 or under our equitable powers. He also argues in the most conclusory possible terms that taking a note secured by a deed of trust to secure payment of a fee is not subject to rule 5-101.

DISCUSSION

1. *Denial of Further Continuance.*

Petitioner claims that he was summarily denied a continuance, and that the hearing panel thereafter immediately commenced the hearing in his absence. He claims that he had not made any previous requests for continuance. This is patently false.

Petitioner claims that hearing in this matter was set for June 24, 1985; that on June 21, 1985, he advised the State Bar Court and trial counsel that he would be unavailable because he would be making closing argument in a murder case on that date, and that the State Bar Court denied his motion for continuance and commenced the hearing. He claims that at the conclusion of the June 24 hearing, the matter was set for further hearing on July 16, 1985. The hearing panel continued the matter to August 12, 1985, without asking petitioner if he was available. Petitioner was selecting a jury in a capital trial on August 12, and he requested a continuance. The request was denied and a further evidentiary hearing was held in his absence. The matter was then set for hearing regarding discipline on September 9, 1985. On August 30, 1985, petitioner retained counsel to represent him. Counsel requested a continuance on September 3, 1985, and requested permission to introduce evidence for petitioner on the merits. The request to introduce

evidence on the merits was denied, though the motion for continuance was granted.

Petitioner's picture of the procedural history of the matter is too rosy. Actually, he failed to respond in a timely fashion and failed to appear at almost every opportunity presented to him.

On April 25, 1984, the notice to show cause was filed. On August 8, 1984, the State Bar served a request for admissions on petitioner. Petitioner failed to respond. The State Bar served notice that the requests for admissions were deemed admitted. On September 13, 1984, petitioner stipulated that he was seeking counsel, that he would notify the State Bar no later than October 15, 1984, of the name of counsel, that he would file a response to the notice to show cause no later than October 15, 1984, and that he would provide answers to interrogatories no later than October 12, 1984, on condition that the notice of admissions be set aside. Also at the September 13, 1984, hearing, in petitioner's presence, hearing dates of April 8, 9 and 10, 1985, were set.

Petitioner failed to notify the State Bar of the name of counsel, failed to file a response to the notice to show cause, and failed to provide answers to interrogatories.

On February 7, 1985, the State Bar served an order to file a response to the order to show cause by February 12, 1985. Petitioner filed his response on February 27, 1985. On February 21, 1985, the State Bar confirmed the hearing date of April 8, 1985. On the day of the hearing, petitioner telephoned to request a continuance since he was in jury trial in a murder case. The request was granted and the matter continued to April 29, 1985. On April 29, 1985, petitioner again telephoned to request a continuance on the ground that he was in jury trial in a murder case. The request was granted and the matter was continued to May 29, 1985. On May 29, petitioner appeared and requested a continuance because he needed to prepare for the penalty phase of a capital trial. The request was granted and the hearing was continued to June 24, 1985, a date petitioner agreed he would be available. Petitioner was ordered to arrange his calendar to make sure that he was available. The presiding referee offered to communicate with any trial judge in order to facilitate petitioner's appearance. On June 21, petitioner's investigator called the State Bar examiner and informed her that petitioner would not appear at the hearing because he had to appear in a murder trial. The examiner told the investigator that only the hearing panel could grant a continuance, but that the last continuance had been granted on the understanding that there would be no further delay. She told the investigator that if petitioner could not appear at the hearing, he should at

least have counsel appear to move for continuance. On June 24, 1985, petitioner failed to appear personally or through counsel. By mailgram received that morning, he requested another continuance on the ground that "a death penalty case takes legal precedence." This time, the request was denied and the hearing proceeded in his absence. The hearing panel ordered that a transcript of the hearing be sent to petitioner, with notice that he could move within 15 days for a further hearing.

The hearing was not completed in one day, and so was continued to July 16 and 17. On July 13, the State Bar continued the matter to August 12 and 13. On August 7 petitioner informed the principal referee that he would not appear at the hearing because he was involved in a capital case. The hearing proceeded in petitioner's absence. On September 9, the hearing panel convened to consider discipline. Counsel appeared for petitioner, and moved for continuance and for leave to interpose an affirmative defense. The motion for continuance was granted but the motion to present evidence in petitioner's defense was denied. On September 23, the hearing panel convened and in petitioner's presence, took evidence and concluded its hearing on the matter.

The proceedings in this matter did not deny petitioner due process, nor was there any abuse of discretion in denying continuances. ■ "Continuances of disciplinary hearings are disfavored, and a request for continuance must be supported by a factual showing of good cause. (Rule F.3, State Bar Court Rules.) . . . A strong rule against unnecessary delay is essential to ensure that the public will be protected by the prompt discipline of erring practitioners. [¶] Moreover, . . . State Bar proceedings cannot be compared to criminal actions, and criminal procedural safeguards do not apply. Generally, an accused attorney has the obligation to obtain representation if he wants it, to appear at the hearing, and to present evidence. The hearing may proceed despite his voluntary absence, and his failure to participate is not grounds for a rehearing to present additional evidence. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].)" (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185]; see also *Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 320 [219 Cal.Rptr. 489, 707 P.2d 862]; *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].)

■ Petitioner had ample opportunity during the 14 months in which the disciplinary proceedings were pending to prepare and present a defense. He repeatedly failed to appear, and failed to demonstrate that he was making any effort to arrange his calendar to accommodate the State Bar proceedings. The record suggests that, on the contrary, petitioner intended to delay the hearing before the hearing panel as long as he could. Under the

circumstances, there was no abuse of discretion or denial of due process in denying the motion for continuance and the motion to reopen the hearing on the merits. (See *Bambic* v. *State Bar, supra,* 40 Cal.3d 314, 320; *Palomo* v. *State Bar, supra,* 36 Cal.3d 785, 793.)

Petitioner claims that the hearing panel should have granted him relief from default under Code of Civil Procedure section 473 at the September 1985 hearing, and that we should reverse the order denying relief from default and remand for a full proceeding on the merits. Putting aside the question of the applicability of this provision to State Bar proceedings, petitioner never made a motion for relief from default, nor did he make the showing required under that section that his "default" was taken "through his or her mistake, inadvertence, surprise or excusable neglect." (Code Civ. Proc., § 473, ¶ 3.) His current claim that he thought that criminal cases took precedence over State Bar proceedings cannot excuse his repeated failures to respond and appear during the 14 months that the State Bar proceedings were pending.

We also reject petitioner's plea that we exercise our equitable powers to "vacate the default" because he has not had a fair adversary hearing. It was petitioner's refusal to cooperate, despite ample notice and many accommodations, that deprived him of an opportunity to present whatever evidence he had on the merits.

2. *Rule 5-101.*

Rule 5-101 provides in pertinent part that "[a] member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client" unless specified safeguards are followed. The predecessor to this rule, former rule 4, provided: "A member of the State Bar shall not acquire an interest adverse to a client."

█ Is a fee agreement in the form of a note secured by a deed of trust on a client's property an interest "adverse" to a client? We have treated a client's loan to an attorney in lieu of attorney's fees as coming under rule 5-101. (See *Ritter* v. *State Bar* (1985) 40 Cal.3d 595, 602 [221 Cal.Rptr. 134, 709 P.2d 1303]; see also *Lewis* v. *State Bar* (1981) 28 Cal.3d 683, 688 [170 Cal.Rptr. 634, 621 P.2d 258].) █ In *Ritter,* we rejected the argument that failure to give the clients time to seek independent counsel is a mere technical violation, emphasizing the fiduciary nature of the relationship: " 'All dealings between an attorney and his client that are beneficial to the attorney will be closely scrutinized with the utmost strictness for any unfairness.' " (*Ritter* v. *State Bar, supra,* 40 Cal.3d at p. 602, quoting *Clancy* v.

*State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329].) We have also said that obtaining a nonrecourse interest in a company indebted to a client is an interest adverse to the client. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 193-194 [242 Cal.Rptr. 196, 745 P.2d 917].) In *Kapelus,* we emphasized the potential conflict of interest involved when an attorney profits from the success of an obligor of his client but is not personally liable for any default on the obligation. The arrangement "clearly put him in a position where his personal financial interest was in conflict with [his client's] interest in obtaining full repayment of its loan." (*Id.* at p. 193.)

In an earlier case, although we said nothing to condemn an attorney for taking as his fee the client's assignment of a note secured by a deed of trust which was one of the assets of the estate he was to probate for the client, we did find the attorney in violation of rule 4 when he caused execution to be levied on the note without notice to the client as soon as she demanded an accounting from him. (*Fall* v. *State Bar* (1944) 25 Cal.2d 149, 159 [153 P.2d 1].)

■ We have also said that an attorney who has obtained an interest in the property of a client where it is reasonably foreseeable that his acquisition may become detrimental to the client, even though his intention is to aid the client, has acquired an interest adverse to a client. (*Ames* v. *State Bar* (1973) 8 Cal.3d 910, 920 [106 Cal.Rptr. 489, 506 P.2d 625] [under former Rules of Prof. Conduct, rule 4].) In *Ames,* the clients had a note secured by a second deed of trust on realty involved in litigation. When foreclosure on the first deed of trust threatened, the attorneys bought the first deed of trust in order to give their clients more time to raise money to protect themselves against the foreclosure which would extinguish their own interest. When the clients were unable to purchase the first deed of trust from the attorneys within the time provided for in the contract between them, the attorneys proceeded to sale. We said that the particular agreement violated former rule 4, since it allowed the attorneys to proceed to sale on their senior encumbrance before a sale on the junior encumbrance, thus extinguishing the client's interest. We also objected to the agreement since it required the clients to waive their claim to surplus proceeds from a sale under the first deed of trust. (*Id.* at pp. 918-919.) We implied that if the agreement between clients and attorneys had been that the attorneys could not proceed to sale on the first deed of trust until the second was satisfied, the purchase of the first deed of trust might not violate former rule 4. It was a separate consideration that the property was the subject of the litigation that the attorneys were engaged to pursue. (*Id.* at p. 919.) We rejected the claim that the agreement was not adverse because it was undertaken at the client's request and to protect the client's interest; we said that the rule prohibits "circumstances where it is reasonably foresee-

able that his acquisition may be detrimental, i.e., adverse, to the interests of his client." (*Id*. at p. 920.) We explained that "[w]e reach this conclusion because we think that [former] rule 4 'is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests. . . .' " (*Ibid*.)

In *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 139 [117 Cal.Rptr. 821, 528 P.2d 1157], we confirmed that there were two reasons that the attorneys in *Ames, supra,* 8 Cal.3d 810, had violated former rule 4: not only had they acquired an interest in the subject matter of the litigation for which they had been retained, but they put themselves in the position of being able to extinguish their client's interest in the property. (*Silver, supra,* 13 Cal.3d at p. 139.) The attorney violated former rule 4 when, after getting a court order for husband to pay attorney fees in a domestic matter, he acquired a writ of execution against husband's property and levied on his own writ instead of his client's (wife's), eventually buying the property at the sheriff's sale. (*Id*. at pp. 139-140.) We said that even if the attorney had gotten a judgment ordering payment of attorney fees in a separate action, we doubted that he could have executed the judgment and bought his client's judgment creditor's property without violating former rule 4. Again, acquiring the ability to summarily *extinguish* the client's interest in property is what makes the acquisition "adverse."

In disapproving the practice of using a confession of judgment to collect legal fees, we have said that that practice "presents opportunities for overreaching that avoid judicial scrutiny; the practice creates a situation in which the client's ignorance of legal matters makes it unlikely that he will understand the character and effect of the instrument. Moreover, use of a confession of judgment is unnecessary, since a promissory note is equally effective to embody the obligation for legal fees into a readily enforceable form." (*Hulland* v. *State Bar* (1972) 8 Cal.3d 440, 450 [105 Cal.Rptr. 152, 503 P.2d 608].) A note secured by a deed of trust in real property can be used to summarily extinguish the client's interest in the property since it gives the attorney the power of sale in a nonjudicial foreclosure proceeding. (See Civ. Code, § 2924 et seq.) ▮▮▮ *Hulland* indicates a disapproval of fee arrangements which allow the attorney to collect disputed fees without judicial scrutiny, as the note secured by deed of trust with a power of sale does. An unsecured promissory note, by contrast, gives an attorney only a right to proceed against the client's assets in a contested judicial proceeding at which the client may dispute the indebtedness. The note allows the attorney to obtain a judgment, and to seek to enforce the judgment against

the client's assets, if any. It does not give the attorney a *present* interest in the client's property which the attorney can summarily realize.

We do not think that this interpretation of the rule is unduly onerous. Attorneys are no longer prohibited from acquiring interests adverse to their clients; rule 5-101 merely requires the attorney to fully explain such transactions, to offer only fair and reasonable terms, to give the client a copy of the agreement, and to give the client an opportunity to seek independent legal advice. When the client puts his assets in the hands of the attorney to the extent of giving him a deed of trust as security, it seems highly appropriate that the provisions of rule 5-101 be applied to the transaction. This is not a great deal more than is now required for most fee agreements; attorneys are now required to put most fee agreements in writing and fully explain the terms of the agreement, with limited exceptions. (See Bus. & Prof. Code, §§ 6147, 6148.) The addition of a requirement that the attorney allow the client an opportunity to seek independent legal counsel if the fee arrangement gives the attorney a secured interest in the client's real property seems modest, to say the least.

We conclude that an attorney who secures payment of fees by acquiring a note secured by a deed of trust in the client's property has acquired an interest adverse to the client, and so must comply with the requirements of rule 5-101.

3. *Degree of Discipline.*

■ Petitioner does not dispute the degree of discipline imposed. We have the ultimate authority to decide upon the degree of discipline, but the review department's recommendation is entitled to great weight. (*Beery* v. *State Bar* (1987) 43 Cal.3d 802, 815 [239 Cal.Rptr. 121, 739 P.2d 1289].) ■ Petitioner's record of prior discipline weighs heavily against him. (*Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 949 [232 Cal.Rptr. 152, 728 P.2d 222].) Indeed, under new standard 1.7 of the State Bar Standards for Attorney Sanctions for Professional Misconduct (eff. Jan. 1, 1986)[4] it is arguable that petitioner should be disbarred, since he has been disciplined

---

[4]Standard 1.7(b) provides that "If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed and the member has a record of two prior impositions of discipline as defined by Standard 1.2(f), the degree of discipline in the current proceeding shall be disbarment unless the most compelling mitigating circumstances clearly predominate."

Standard 1.2(f) provides that " '[p]rior record of discipline' is a previous imposition or recommendation of discipline of the member as defined by rule 571, Rules of Procedure of the State Bar. It includes discipline imposed for a member's violation of probation or wilful violation of an order of the Supreme Court requiring compliance with rule 955, California Rules of Court."

on two prior occasions. We have permitted the use of these new standards as guidelines in assessing appropriate discipline for conduct predating the new standards. (See *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; see also *Kapelus* v. *State Bar, supra,* 44 Cal.3d at p. 198, fn. 14, and cases cited.) Violations of rule 5-101 and former rule 4 have resulted in discipline ranging from private reproval, in *Ames* v. *State Bar, supra,* 8 Cal.3d 910 to two years' actual suspension in *Krieger* v. *State Bar* (1954) 43 Cal.2d 604 [275 P.2d 459] and *Beery* v. *State Bar, supra,* 43 Cal.3d 802. ▇▇▇ We must, of course, decide each case on its own facts, as "there are no fixed standards as to the appropriate penalty." (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].)

▇▇▇ We regard petitioner's history of discipline with concern, and see further evidence in aggravation in petitioner's attitude toward the disciplinary proceedings. Also, petitioner not only failed to comply with rule 5-101, he misled his clients about the time they had in which to meet the obligation secured by the deeds of trust, and he changed the terms of the first agreement after Mr. Mederos had already executed it.

In mitigation, petitioner presented the testimony of a superior court judge, a chief assistant public defender, and three district attorneys who had observed petitioner practicing for many years, and who uniformly praised his ability as an attorney and his dedication to his clients. One witness also described petitioner's zeal in undertaking pro bono work. Petitioner also testified in mitigation that he thought that the Mederoses had understood the terms of what he considered self-explanatory promissory notes. Petitioner's mitigating evidence, and the fact that we have not previously held that an attorney who takes a note secured by a deed of trust automatically acquires an interest "adverse" to his client, make petitioner's conduct in this matter less reprehensible than would be a violation of a more clear-cut and well-established rule. Accordingly, we adopt the recommendation of the review department.

It is ordered that petitioner Richard Hawk be suspended from the practice of law for four years. Execution of suspension is stayed and petitioner is placed on probation for four years, with actual suspension of six months. Petitioner is ordered to comply with the other conditions of probation set forth in the review department's order.

It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (b) of that rule within 30 and 40 days, respectively, after the effective date of this order. We further order that petitioner take and pass the Professional Responsibility Examination within one year of the

effective date of this order. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective 90 days after finality of this opinion.