*Supp. 18 Opinion
SAETA, J.
Plaintiff, an attorney at law, appeals from a judgment denominated “Judgment #1” which denied him relief against defendants Basil Feinberg (Feinberg), Adolph Alexander (Alexander) and International Ladies’ Garment Workers’ Union (Union). The judgment followed the granting of those defendants’ motions for judgment at the close of plaintiff’s case under Code of Civil Procedure section 631.8. The judgment labeled “Judgment #2” in favor of plaintiff against defaulting defendant Tracy Vercher (Vercher) for $1,500 is not directly involved in this appeal.
Plaintiff represented Vercher in the latter’s claim against Union. Feinberg was the attorney for Union. Vercher authorized plaintiff to negotiate a settlement for $4,000. Plaintiff and Feinberg agreed to settle for $4,000 but Vercher declined to go forward with the settlement. Thereupon, plaintiff moved the court to authorize his withdrawal as counsel for Vercher. Vercher attended the hearing and did not oppose the motion and plaintiff was allowed to withdraw. Prior to the giving of notice of the court’s ruling, Vercher signed a receipt for the case files and gave a written lien to plaintiff for $1,500 additional attorney fees.
Plaintiff notified Feinberg, Union and Alexander (Vercher’s next attorney) of his lien. Alexander and Feinberg negotiated another settlement of Vercher’s claim against Union, this time for $4,250. Feinberg procured the settlement money and paid the $4,250 to Alexander “in trust.” Alexander retained $250 for his efforts and disbursed the balance of $4,000 to Vercher. Plaintiff’s lien was not honored by any of the defendants. The court found that there was no bad motive or malice or conspiracy among the defendants to deprive plaintiff of his fees and, in essence, that plaintiff had waived his lien by withdrawing as attorney for Vercher.
Plaintiff asserts that the intentional disregard of his lien renders the defendants Feinberg, Union and Alexander liable for an interference with his prospective economic advantage. Feinberg basically argues that plaintiff’s withdrawal forfeited his lien. Alexander claims that it would be unconscionable to honor the $1,500 lien as plaintiff had already received in excess of $1,200 for his services.
The parties have not been able to find a California case which squarely applies to the situation here where the attorney withdraws from a case *Supp. 19 rather than where the attorney is discharged by the client. In the latter situation Siciliano v. Fireman’s Fund Ins. Co. (1976) 62 Cal.App.3d 745 [133 Cal.Rptr. 376] holds that on discharge an attorney’s lien remains and that Fracasse v. Brent (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9] did not change this rule but only held that the attorney’s services were to be compensated on the basis of a reasonable fee rather than on the contracted fee. Siciliano holds that payment by an insurer to the client with knowledge of the attorney’s lien constitutes a tortious interference with prospective economic advantage.[1]
Plaintiff cites an out-of-state case in support of his lien in the “withdrawal” situation; In re Dunn (1912) 205 N.Y. 398 [98 N.E. 914] in the New York Court of Appeals. In Dunn the attorney properly withdrew from representing a corporation after receivers had been appointed to replace the corporate officers. The court held that his lien for his services remained intact. Alexander cites a later New York trial court decision, Eisenberg v. Brand (1932) 144 Misc. 878 [259 N.Y.S. 57], to the effect that the attorney’s lien is lost on his withdrawal from the case. Eisenberg seems less persuasive for several reasons: it is a trial court decision as opposed to one by New York’s highest court; it did not discuss In re Dunn; and it did not involve a written lien (as is the situation in the case at bench) but, rather, an application for an equitable lien.
Feinberg attacks Siciliano on the basis that there is a difference between an insurer paying a client directly and paying the client’s later attorney. However, the thrust of Siciliano is found in the following quotation: “Even though the law favors voluntary settlements or compromises, it does not favor the making thereof in derogation of the rights of those having a lien on the moneys or to whom other obligations are owing in connection therewith.” (62 Cal.App.3d at p. 758.) Thus it is the payment of settlement funds in disregard of a known lien that is crucial, not the person who receives the settlement moneys initially. Nor can Feinberg rely on Alexander’s judgment on whether or not the lien should be honored. There is no way that Feinberg could shield himself or his client from liability by relying on his adversary’s attorney. By paying the *Supp. 20 settlement moneys without regard to plaintiff’s lien, Feinberg exposed himself and his client to plaintiff’s claim of interference with his prospective economic advantage.
Alexander argues that a $1,500 fee in addition to the $1,200 already paid to plaintiff, in light of Vercher’s total recovery of $4,000 or $4,250 is unconscionable and unreasonable. However, this argument flies in the face of Judgment #2 which ordered Vercher to pay the $1,500 to plaintiff and the court’s striking of proposed Finding of Fact No. 8 which stated that the attorney fees already received (the $1,200) constituted reasonable fees for the services plaintiff rendered.
While the trial court found that plaintiff was under no legal compulsion to withdraw from the case, there is no finding that his withdrawal was improper. Rules of Professional Conduct, rule 2-111(C) authorizes a withdrawal where the client’s conduct (here the refusal to consummate an agreed-upon settlement) renders it unreasonably difficult for the attorney to carry out his employment effectively. Further, the withdrawal was made on order of the court without opposition from Vercher.
We see no reason to differentiate between the situation where the attorney is discharged and where the attorney is allowed to withdraw insofar as continuation of the attorney’s written lien for fees is involved. In the absence of authority to the contrary, we hold that the plaintiff adequately showed that his rights were tortiously interfered with by the defendants.
The judgment appealed from is reversed.[2]
Appellant to recover his costs on appeal.
Cole, P. J., concurred.

 WhiIe it is true that defendants were not acting maliciously or with a bad motive or in a conspiracy, such elements are not needed to establish the tort of intentional interference with a prospective economic advantage. “. . . the actual notification given by plaintiff [attorney] to Insurer of the existence of the lien, and the payment to [client] by Insurer with knowledge of the attorney’s lien sufficiently show a deliberate and intentional interference on Insurer’s part with plaintiff’s lien and rights under the agreement—an intentional interference with plaintiff’s ‘prospective economic advantage’ under all the circumstances.” (Siciliano v. Fireman’s Fund Ins. Co. (1976) 62 Cal.App.3d 745 at p. 753.)

 We express no opinion at this time as to the reasonableness of plaintiff’s fee. That is for the trial court to decide in the first instance. (Fracasse v. Brent, supra, 6 Cal.3d 784.)