[No. B121798. Second Dist., Div. Two. Feb. 16, 1999.]

ROBERT S. LEVIN, Plaintiff and Appellant, v.
GULF INSURANCE GROUP et al., Defendants and Respondents.

**COUNSEL**

Fields & Fields and Howard M. Fields for Plaintiff and Appellant.

Norby & Brodeur and John G. Tavetian for Defendants and Respondents.

## OPINION

**MALLANO, J.\***—Plaintiff and appellant Robert S. Levin (appellant) appeals from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendants and respondents Gulf Insurance Group (Gulf), Norby & Brodeur and Ruben Baeza, Jr. (Baeza).[1]

■ In reviewing the sufficiency of a complaint against a general demurrer that was sustained, we treat the demurrer as admitting all material facts that are properly pleaded and determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)[2] Moreover, "[i]n the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

### Factual and Procedural History

In his complaint, appellant alleges in essence as follows. Appellant, an attorney, was retained by Keith Piontkowski in connection with a motor vehicle accident in which the latter was injured. A written contingent fee agreement was entered into providing appellant with a lien for attorney fees and costs against any forthcoming settlements or judgments. Appellant filed suit, arbitrated the matter and obtained a settlement offer of $40,000 from Gulf, the insurance carrier for the defendants in the action. Rather than accepting the offer, Piontkowski discharged appellant. Shortly thereafter, appellant filed a notice of lien for his services and costs and served a copy on Norby & Brodeur, attorneys for defendants in the action, and Gulf. Piontkowski retained Attorneys Donner and Levine and the matter went to trial, resulting in a judgment in his favor. Despite their knowledge of appellant's lien, Gulf, Norby & Brodeur and its associate attorney, Baeza, caused a draft to be issued made out to Piontkowski and Donner & Levine in settlement of the case. Thereafter, appellant attempted to contact Donner & Levine, but his telephone calls were not accepted and his correspondence ignored. Appellant has received no portion of the draft's moneys. In the first

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Appellant also appeals from all related orders including the order of February 24, 1998, denying appellant's motion for reconsideration. Assuming such orders are appealable, we do not reach them in light of our holding on the pivotal issue in the case.

[2]Respondents argue that appellant has not met his burden to establish an abuse of discretion by the trial court. With respect to the issue of whether the complaint states facts sufficient to constitute a cause of action, the abuse of discretion standard does not apply.

cause of action for intentional interference with prospective economic advantage, appellant seeks judgment against respondents[3] for the attorney fees and costs owed him pursuant to the cases of *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9] (*Fracasse*) and *Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745 [133 Cal.Rptr. 376] (*Siciliano*).)[4]

Respondents filed a general demurrer, claiming that a cause of action for intentional interference with prospective economic advantage was not stated because (1) payment was made by Gulf in satisfaction of a judgment, not by way of settlement, (2) the notice of lien did not instruct respondents to include appellant's name on the draft, and (3) appellant's claim is fully protected by virtue of Donner's having placed $16,000 in his client's trust account and offering to arbitrate appellant's claim for the reasonable value of his attorney fees.[5] Respondents offered no authority in support of any of these contentions in their memorandum of points and authorities filed with their demurrer. The trial court sustained the demurrer without leave to amend.

### Issue

Appellant contends that an insurer and the attorneys retained to defend the insureds are liable for intentional interference with the prospective economic advantage of a discharged attorney when, after receiving a notice of a lien for attorney fees and costs filed in the case by the discharged attorney, they pay his former client and the latter's new counsel in settlement of the case with knowledge of the lien.[6] We agree.

### Discussion

In *Fracasse*, *supra*, 6 Cal.3d 784, our Supreme Court established the rule that ". . . an attorney discharged with or without cause is entitled to recover the reasonable value of his services rendered to the time of discharge." (6 Cal.3d at p. 792.)

---

[3]Respondents are named in the first cause of action only. Not part of this appeal, the second cause of action for breach of contract is against Piontkowski and the third cause of action for conversion is against Michael Donner and Donner & Levine.

[4]These two cases were cited in the notice of lien as well as in the complaint.

[5]Respondents concede that we cannot consider statements of Michael Donner in deciding whether the general demurrer should have been sustained. Accordingly, we do not discuss the third ground of the demurrer.

[6]Respondents Gulf, Norby & Brodeur and Baeza are represented on appeal by the firm of Norby & Brodeur. In their brief, and as well in their demurrer which is the subject of this appeal, there is no discussion of the separate liabilities of Gulf on the one hand and Norby & Brodeur and Baeza on the other. As the attorneys chose to place themselves in the same boat as Gulf, which they represent on appeal, we consider all respondents in the same light.

In *Siciliano, supra,* 62 Cal.App.3d 745, an attorney entered into a written retainer agreement with his client that provided for a contingent fee plus the express creation of a lien. The client discharged the attorney without cause and represented himself. The attorney notified the insurer of the other party of the lien which the attorney had under the retainer agreement. Thereafter, the insurer, with the knowledge of the attorney's lien, paid settlement moneys to the former client alone. In overruling the insurer's demurrer, the court observed that a contingent fee contract with the creation of a lien in favor of the attorney provides the attorney with a lien on the judgment or settlement to the extent of fees and costs which were due him for services. (62 Cal.App.3d at p. 752.) The court held that the notice of the lien the attorney gave the insurer, and the payment to the attorney's former client by the insurer with knowledge of the lien, made the insurer liable for an intentional interference with the attorney's prospective economic advantage. In response to the insurer's argument that the law favors compromise and to hold it liable will discourage settlements in cases where an attorney has been discharged, the court stated: "Even though the law favors voluntary settlements or compromises, it does not favor the making thereof in derogation of the rights of those having a lien on the moneys or to whom other obligations are owing in connection therewith." (*Id.* at p. 758.) The insurer also argued that as the former client was acting as his own attorney, the insurer could pay all settlement moneys to the "attorney" client and, thus, avoid liability, since an attorney who has authority to settle or collect a claim also has authority to receive payment. The court made short shrift of this argument by stating that the former client was not an attorney.

Applying the principles set forth in *Fracasse* and *Siciliano,* it is clear that appellant had a lien against the moneys respondents paid to Donner & Levine and Piontkowski in settlement of the case. Respondents' contention that *Siciliano* is distinguishable because it dealt with a payment in settlement and not in satisfaction of a judgment is misplaced. ■ Assuming, for the sake of discussion, that the payment was made in satisfaction of a judgment, *Siciliano* states that ". . . a contingent fee contract with creation of a lien in favor of counsel . . . gives him a lien upon the recovery . . . and the attorney is regarded as an equitable assignee of the *judgment or settlement* to the extent of fees and costs which are due him for services. [Citations.]" (*Siciliano, supra,* 62 Cal.App.3d at p. 752, italics added.) ■ Respondents point out that *Siciliano* was silent as to whether a lienholder's name had to be included on a settlement draft. While that is true, it is of no consequence as *Siciliano* held the insurer liable for *payment* of the settlement funds to the lienholder's former client. Respondents similarly contend that since neither the contingent fee agreement nor the notice of lien called for appellant's name being placed on the draft, appellant's claim is fatally

defective. Respondents cite no authority in support of this position and we reject it as it is the act of *payment* in derogation of the lienholder's rights that creates liability. Of course, had respondents included appellant's name on the draft, they would not have been exposed to liability by the payment.

The remaining issue is whether respondents' payment to Attorneys Donner and Levine, in addition to Piontkowski, relieved respondents of their responsibility to appellant. The only case that deals with this issue is *Pearlmutter* v. *Alexander* (1979) 97 Cal.App.3d Supp. 16 [158 Cal.Rptr. 762], an opinion of the Appellate Division of the Superior Court of Los Angeles County. There, the client authorized his first attorney to negotiate a settlement with a union for $4,000. The first attorney and the union's lawyer agreed on the $4,000 settlement figure, but the client had a change of heart and rejected the settlement. The first attorney, upon a noticed motion, obtained court approval to withdraw from the case. The first attorney then obtained a written lien from the former client for the balance of his fees and notified the union, its lawyer and the former client's new counsel of the lien. A settlement of $4,250 was reached and the union's attorney paid the $4,250 in trust to the new lawyer. On appeal, the first attorney claimed that these acts made the union, its lawyer, and the second attorney liable for an interference with the first attorney's prospective economic advantage. In rejecting the union lawyer's contention that *Siciliano* should not be extended to create liability where payment is made to the client's successor attorney, the court states: ". . . [It] is the payment of settlement funds in disregard of a known lien that is crucial, not the person who receives the settlement moneys initially. Nor can [the union's lawyer] rely on [the successor attorney's] judgment on whether or not the lien should be honored. There is no way that [the union's lawyer] could shield himself or his client from liability by relying on his adversary's attorney. By paying the settlement moneys without regard to plaintiff's lien, [the union's lawyer] exposed himself and his client to plaintiff's claim of interference with his prospective economic advantage." (*Pearlmutter* v. *Alexander, supra,* at pp. Supp. 19-20.) Although we are not bound by a decision of the appellate division of the superior court (see *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]), we find its reasoning persuasive insofar as it pertains to payment to the successor attorney.[7]

Accordingly, we hold that an insurer and the attorneys retained to defend the insureds are liable for intentional interference with the prospective

[7]Dictum in *Pearlmutter* that an attorney who is allowed to withdraw from a case should be treated the same as one who has been discharged has been disapproved in two Court of Appeal decisions, namely *Hensel* v. *Cohen* (1984) 155 Cal.App.3d 563, 568 [202 Cal.Rptr. 85] and *Estate of Falco* (1987) 188 Cal.App.3d 1004, 1013 [233 Cal.Rptr. 807]. These two cases embrace the general rule followed in other jurisdictions that recovery for services in quantum meruit is allowed only to an attorney who withdraws with *justifiable* cause. (*Id.* at p. 1014.) *Estate of Falco* also disagrees with *Pearlmutter's* conclusion that a client's refusal to

economic advantage of a discharged attorney when, after receiving a notice of lien for attorney fees and costs filed in the case by the discharged attorney, they pay his former client and the latter's new attorney in settlement or in satisfaction of a judgment with knowledge of the lien.

## Disposition

The judgment of dismissal filed on March 11, 1998, is reversed. Appellant is awarded costs on appeal.

Boren, P. J., and Nott, J., concurred.

---

settle justifies his or her attorney's withdrawal. Since appellant was *discharged* by Piontkowski, the grounds on which *Pearlmutter* has been disapproved are not applicable to the case at hand.