130 Cal.Rptr.2d 696 (2003)
106 Cal.App.4th 398
Freddie FLETCHER, Plaintiff and Appellant,
v.
Carlyle DAVIS et al., Defendants and Respondents.
No. B151534.
Court of Appeal, Second District, Division Seven.
February 19, 2003.
Rehearing Denied March 20, 2003.
Review Granted May 14, 2003.
*697 Freddie Fletcher, in pro per, for Plaintiff and Appellant.
Kathryn M. Davis, San Francisco, for Defendant and Respondent Davis.
Gernsbacher and Associates and David L. Gernsbacher, Los Angeles, for Defendant and Respondent Gernsbacher.
Stocker & Lancaster and Jay F. Stocker for Defendant and Respondent Master Washer and Stamping Co.
Fischbach & Fischbach and Joseph S. Fischbach for Defendant and Respondent Fischbach.
Certified for Partial Publication.[*]
JOHNSON, J.
Plaintiff Freddie Fletcher, an attorney, seeks to recover legal fees and expenses owed by his former client, defendant Master Washer and Stamping Company. Fletcher's complaint alleges he has a contractual hen on a judgment obtained by Master Washer and that Master Washer and the third party defendants, Carlyle Davis, Arthur Gilbert, David Gernsbacher and Joseph Fischbach converted the proceeds of the judgment to their own use thereby depriving him of his rightful share. The trial court sustained the defendants' demurrers and dismissed the action. We affirm the judgment of dismissal as to Master Washer and reverse as to the other defendants.[1]

FACTS AND PROCEEDINGS BELOW
The relevant allegations of the complaint are as follows.
*698 Master Washer came to Fletcher for help when it was sued by Gilbert for breach of lease and Gilbert refused to release its manufacturing equipment.[2] The equipment was Master Washer's only asset and without it Master Washer could not conduct its business. Master Washer orally agreed to pay all costs plus Fletcher's fee of $200 per hour to defend it in the breach of lease suit and to get its equipment back. In lieu of a cash retainer, Master Washer agreed to give Fletcher a lien on any judgment or settlement in its litigation with Gilbert. If the judgment or settlement was insufficient Master Washer agreed to pay the difference from the income it earned once it resumed operations. Master Washer also promised Fletcher a "bonus" of a percentage of any judgment obtained against Gilbert if extensive litigation or trial was required and if the recovery in the case was "large."
Fletcher prepared and filed a complaint for conversion against Gilbert. The complaint also named Gilbert's attorney David Gernsbacher as a defendant based on his alleged role in preventing Master Washer from recovering its property from the leased premises. Prior to filing the complaint, Fletcher sent Master Washer a memorandum setting forth his understanding of the terms of their oral retainer agreement. Master Washer's president, William Scallon, represented to Fletcher he would sign a written retainer agreement, but never did so. The suits between Gilbert and Master Washer were consolidated.
While the Gilbert/Master Washer litigation was pending, Fletcher agreed to do additional, personal legal work on behalf of Master Washer's president, Scallon, and Scallon's mother. In each matter Scallon, on behalf of Master Washer, gave Fletcher a lien on Master Washer's prospective recovery against Gilbert in the conversion action. In Master Washer's conversion action against Gilbert and Gernsbacher, Gernsbacher obtained a summary judgment. In Gilbert's action against Master Washer for breach of lease, Gilbert and Master Washer entered into an agreement under which Master Washer admitted liability to Gilbert for breach of the lease and stipulated a judgment be entered against it and in favor of Gilbert for $85,000 in damages.[3] Master Washer's conversion action against Gilbert was tried to a jury and resulted in a mistrial. While Fletcher was in the process of preparing for a second trial Master Washer discharged him and replaced him with attorney Joseph Fischbach. Scallon also discharged Fletcher from the other legal matters he was handling on behalf of Scallon and his mother.
The second trial of Master Washer's conversion action against Gilbert resulted in a judgment in favor of Master Washer in the sum of $504,000 plus interest.
Eleven days after entry of judgment in favor of Master Washer in its conversion action against Gilbert, Davis filed suit against Gilbert, Master Washer and Scallon seeking to satisfy judgments he held against Scallon out of Master Washer's recovery in the conversion action. The trial court issued a temporary restraining order prohibiting Scallon's diversion of the proceeds from the Master Washer judgment against Gilbert. The following day Gilbert deposited in the Davis action the sum of $618,194.10 representing the amount of the Master Washer judgment plus accrued interest. A few weeks later *699 the parties to the Davis action and others claiming an interest in the Master Washer judgment stipulated to a disbursement of the judgment in specified amounts to Davis, Gilbert, Master Washer and Fischbach. The trial court approved the stipulation and ordered the Master Washer judgment disbursed accordingly. Under the stipulation all but approximately $8000 of the judgment proceeds were disbursed to Davis, Gilbert, Master Washer and Fischbach.
Fletcher alleges he did not learn about the Davis action or the stipulated disbursement of the Master Washer judgment until the day after the funds had been disbursed. Fletcher then filed this action against Master Washer and the third party defendants named above alleging causes of action for declaratory relief, conversion, account stated and money had and received. In his complaint he alleges the defendants were on notice of his lien at the time they stipulated to the disbursement of the proceeds from the Master Washer judgment.
The trial court sustained the demurrers of the third party defendants without leave to amend and dismissed the action as to them on the grounds Fletcher did not and could not plead facts showing the perfection of a lien on the Master Washer judgment or that the third parties had knowledge of such a hen. The court sustained the demurrer of Master Washer with leave to amend on the ground Fletcher had not pled he gave Master Washer timely written notice of the right to arbitrate an attorney-client fee dispute as required by Business and Professions Code section 6201.[4] When Fletcher failed to amend his complaint within the allotted time the trial court dismissed his action against Master Washer. Fletcher filed a timely notice of appeal.

DISCUSSION

I. THE TRIAL COURT PROPERLY DISMISSED THE COMPLAINT AS TO MASTER WASHER BECAUSE FLETCHER FAILED TO DEMONSTRATE COMPLIANCE WITH SECTION 6201.[**]

II. FLETCHER'S LIEN AGREEMENT DID NOT HAVE TO BE IN WRITING TO BE VALID AND ITS VALIDITY CAN BE LITIGATED IN HIS ACTION AGAINST THE THIRD PARTY DEFENDANTS.

Fletcher's causes of action against the third party defendants for declaratory relief, conversion and money had and received are dependent on his assertion he has a contractual lien on Master Washer's judgment against Gilbert. The trial court ruled Fletcher's complaint failed to allege facts supporting a Hen, Fletcher declined the opportunity to amend the complaint, and the court entered a judgment of dismissal as to the third party defendants.
The complaint alleges Fletcher and Master Washer entered into an oral retainer agreement which included a lien in favor of Fletcher on any judgment or settlement in its litigation with Gilbert.
The trial court ruled no lien was created because under rule 3-300 of the Rules of Professional Conduct[15] an attorney's lien on a client's recovery must be in writing. The court further ruled Fletcher could not claim a lien on Master Washer's recovery until he obtained a judgment in an independent action establishing the existence *700 and amount of Master Washer's indebtedness for fees and costs. The court also suggested even if the hen could be established in the present action the third party defendants could not be liable for interfering with the lien based on things they did months before the present action was even filed. We examine each of these grounds below.

A. A Client's Agreement To A Lien For Attorney's Fees On A Prospective Recovery Need Not Be In Writing To Be Enforceable.

The trial court ruled Fletcher could not state a cause of action against the third party defendants because his purported lien for fees and costs was admittedly based on an oral agreement with Master Washer and, as a matter of law, for a hen on a client's prospective recovery to be valid it must be in writing. We disagree.
The question whether the client must agree in writing to her attorney's lien on her recovery is one of first impression in California appellate courts.[16]
Some treatises and bar association ethics opinions have considered the question and reached conflicting conclusions. For example, the Restatement Third of the Law Governing Lawyers states the agreement must be in writing.[17] An ethics opinion by the California Bar Association agrees[18] but an ethics opinion by the San Francisco Bar Association disagrees.[19] The Los Angeles County Bar Association has taken contradictory positions on the issue.[20]
The few cases from other jurisdictions which have considered the issue are also in conflict. For example, Florida courts have held the only thing necessary to create a charging lien is an agreementwritten or oralthe attorney will proceed with the matter and the client will pay for his services.[21] In contrast, the Wisconsin courts have held a charging hen must be based on a written contract even though the statutes which authorize such liens require only a "contract," without specifying the contract must be in writing.[22]
The question admittedly is a close one and reasonable justices, lawyers and scholars could, and do, arrive at different conclusions. Based on the provisions of rule 3-300 and our Supreme Court's opinion in Hawk v. State Bar,[23] discussed below, we conclude an agreement to a charging hen need not be in writing.
The trial court impliedly found the oral retainer agreement between Fletcher and Master Washer was not a contingent fee contract even though it provided for a "bonus" in addition to Fletcher's hourly rate if obtaining a judgment against Gilbert *701 involved extensive litigation or trial and if the recovery in the case was "large."[24]
The agreement therefore falls within Business and Professions Code section 6148 which states, as a general rule, in any case not involving a contingent fee "in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ... the contract for services in the case shall be in writing."[25] Failure to comply with the writing requirement "renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee."[26] There is an important exception to the general rule stated in section 6148. The Legislature provided: "This section shall not apply ... [¶] [i]f the client is a corporation."[27] Thus, because Master Washer is a corporation, the oral contract in which it agreed, among other things, to a charging lien on its prospective recovery against Gilbert is not voidable.
The trial court concluded, however, rule 3-300 independently requires all agreements to charging liens must be in writing. We disagree.
Rule 3-300 provides: "A member shall not ... knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition." [Emphasis added.]
It is undisputed a charging Hen is a "security interest" in the proceeds of the litigation.[28]
As previously noted, there is authority for the defendants' argument such Hens must be in writing. In the discussion following rule 3-300 the State Bar advises the rule "is intended to apply where the member wishes to obtain an interest in client's property in order to secure the amount of the member's past due or future fees."[29] An interest in the client's property to secure the amount of past or future fees describes a charging lien. The State Bar took the same position in S.B. Formal Opinion No.1981-62[30] reasoning if the lawyer holds an interest in the client's property as security for the lawyer's fees, "when fees are not paid, an adverse interest exists and may continue to exist during the course of the representation."[31] Therefore, the committee concluded, "it is unethical *702 to require a lien or security device unless the member adheres to the provisions of rule 5-101 [now rule 3-300]."[32]
Our Supreme Court's subsequent decision in Hawk v. State Bar[33] casts doubt on the reasoning supporting the California Bar Association's ethics opinion. In Hawk, the issue was whether an attorney who takes a promissory note secured by a deed of trust in real property to secure payment of a fee must comply with former rule 5-101 of the Rules of Professional Conduct, now rule 3-300.[34] After reviewing its previous decisions finding attorneys had acquired interests adverse to their clients, the Supreme Court concluded "acquiring the ability to summarily extinguish the client's interest in property is what makes the acquisition `adverse'."[35] The vice in fee arrangements such as a note secured by a deed of trust is that it would allow the attorney to collect disputed fees "without judicial scrutiny."[36] Therefore, the court held, an attorney can only ethically enter into such arrangements if she complies with the provisions of rule 3-300.[37] In contrast, the court observed, an unsecured promissory note "gives an attorney only a right to proceed against the client's assets in a contested judicial proceeding at which the client may dispute the indebtedness. The note allows the attorney to obtain a judgment, and to seek to enforce the judgment against the client's assets, if any."[38]
In our view, a charging lien is like an unsecured note and, therefore, not subject to rule 3-300. A charging lien is not adverse to the client because "[i]t does not give the attorney a present interest in the client's property which the attorney can summarily realize."[39] Rather, after the client obtains a recovery, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it.[40] The client may set up any defenses she may have,[41] including a claim the fees sought are unconscionable[42] or that she is entitled to a set-off against the fees for the attorney's malpractice.[43] We believe the procedures for establishing and enforcing a charging hen provide the kind of judicial scrutiny called *703 for in Hawk and therefore such a lien is not "adverse to the client" and not subject to the requirements of rule 3-300.
We recognize an argument can be made that because Master Washer is a corporation and the lien agreement was part of the retainer agreement, requiring the lien agreement to be in writing when the retainer agreement itself need not be in writing would put rule 3-300 in direct conflict with Business and Professions Code section 6148, subdivision (d)(4).[44] If the Legislature did not believe a corporation needed to agree in writing to the most important terms of the retainer agreement, such as the hourly rates and charges applicable to the case and the general nature of the legal services to be provided,[45] it seems unlikely the Legislature believed a corporation needed to agree in writing to a lien on its prospective recovery. We need not address this issue, however, in light of our conclusion rule 3-300 does not apply to either corporate or noncorporate clients.

B. A Judgment Establishing The Existence And Amount Of Fletcher's Lien For Attorney's Fees Is Not A Prerequisite To His Causes Of Action Against The Third Party Defendants.

As an alternative ground for sustaining the third party defendants' demurrers the trial court ruled Fletcher could not bring an action based on a lien on Master Washer's recovery until he obtained a judgment in an independent action establishing the existence and amount of the lien. Again we disagree.
The law is well-settled in California a contractual lien for attorney's fees is not self-executing. Although a valid agreement for a lien on a client's judgment "is decisive as to its existence"[46] a discharged attorney such as Fletcher "must file an independent action to establish the amount of the lien and to enforce it."[47]
The requirement of an "independent action" means the attorney claiming a lien on a client's judgment must establish the lien in an action other than the one in which the judgment is obtained.[48] It does not mean the attorney must then bring a second "independent action" to enforce the lien against third parties.
In Weiss v. Marcus,[49] for example, a discharged attorney brought an action against his former client and the attorneys who replaced him in the underlying action to recover the reasonable value of his legal services. The plaintiff claimed he had a lien on all amounts recovered in the underlying action as security for payment of his fees. After he was discharged the replacement attorneys obtained a settlement for the client but the client refused to pay the plaintiff his reasonable fees. The plaintiff stated he filed a notice of his lien claim in the underlying action and served copies on the replacement attorneys. Despite this notice the replacement attorneys disbursed the settlement to the client, themselves and others and paid none of the funds to *704 plaintiff.[50] Plaintiff alleged causes of action against his former client for breach of contract and, like Fletcher in the present case, against the third party defendants for money had and received and conversion, among other things. The trial court sustained the demurrer of the third party defendants and dismissed the action as to them.
The Court of Appeal reversed. It held the complaint adequately pled the existence of a hen and the reasonable value of the plaintiffs services and stated causes of action against the third party defendants for money had and received and for conversion. As to the former the court observed "[a]n action for money had and received lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter."[51] The complaint alleged the proceeds of the settlement in the underlying action were paid to the defendants; a portion of that sum belonged to plaintiff by virtue of his lien for the reasonable value of his legal services; defendants thus became indebted to plaintiff "`for money had and received by said defendants and each of them for use and benefit of plaintiff"[52] With respect to the conversion cause of action the court noted: "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."[53] Money can be the subject of an action for conversion if a specific sum capable of identification is involved. "[P]laintiff alleged $35,000 was paid and $6,750 of that sum was his. This allegation was sufficient to state a cause of action for conversion...." [54]
A similar result was reached in Levin v. Gulf Ins. Group.[55] The case involved a discharged attorney who gave notice of his hen on the judgment or settlement to the insurer of the defendant in the underlying action and to the insurer's attorneys. When, "despite their knowledge of [the discharged attorney's] lien" the insurer and its attorneys paid the judgment to the former client and the replacement attorneys the discharged attorney sued the insurer and its attorneys for intentional interference with economic advantage.[56] The trial court sustained the defendants' demurrer without leave to amend and dismissed the action as to them. The judgment was reversed on appeal. The Court *705 of Appeal stated: "[W]e hold that an insurer and the attorneys retained to defend the insureds are liable for intentional interference with prospective economic advantage of a discharged attorney when, after receiving a notice of lien for attorneys fees and costs filed in the case by the discharged attorney, they pay his former client and the latter's new attorney in settlement or in satisfaction of a judgment with knowledge of the lien."[57]
Weiss and Levin also stand for the proposition that for a taking to be "wrongful," and thus support an action for conversion,[58] the defendants need only be on notice of the plaintiffs claim to a lien on the settlement or judgment in the action; they need not be on notice of a judgment in an independent action establishing the lien and the amount thereof. The facts in the present case demonstrate why this is so. Because the discharged attorney's cause of action to enforce a lien on a settlement or judgment obviously does not accrue until the case is settled or a judgment entered,[59] the proceeds of the settlement or judgment may be disbursed and unreachable long before the discharged attorney can establish his Hen in an independent action.[60] Thus, the rule, as it has developed, means third parties who disburse the proceeds of a settlement or judgment with knowledge of a discharged attorney's lien claim do so at their peril.[61]

III. THE ADDITIONAL GROUNDS FOR DEMURRER ASSERTED BY DEFENDANTS GILBERT AND GERNSBACHER ARE WITHOUT MERIT.[***]

DISPOSITION
The judgment of dismissal is affirmed as to defendant Master Washer and reversed as to the other defendants. Master Washer is awarded its costs on appeal from Fletcher, and Fletcher is awarded his costs on appeal from the other defendants.
We concur: PERLUSS, P.J. and WOODS, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.
[1] On December 12, 2002, the day before oral argument in this appeal, Fletcher filed a motion to strike Master Washer's brief and enter its default on the ground Master Washer's corporate powers were suspended by the Secretary of State on February 2, 1999 and had not been reinstated as of July 3, 2000. We deny the motion because the evidence of suspension is not properly authenticated and does not show Master Washer is currently suspended. Even if we were to grant the motion it would not change the result in this case. Fletcher could sue Master Washer even if it was suspended but he still had to comply with Business and Professions Code section 6201 before filing suit.

Also on the day before oral argument, Fletcher filed motions to strike the briefs of respondents Davis and Fischbach and for sanctions. These motions are denied. Fletcher's motions to strike are in reality untimely attempts to file reply briefs (see California Rules of Court, rule 15(a)(3)). The motions for sanctions are also untimely (see California Rules of Court, rule 27(e)).
[2] See Gilbert v. Master Washer & Stamping Co. (2001) 87 Cal.App.4th 212, 214, 104 Cal. Rptr.2d 461.
[3] See Gilbert v. Master Washer & Stamping Co., supra, 87 Cal.App.4th at pages 214-215, 104 Cal.Rptr.2d 461.
[4] Future statutory references are to the Business and Professions Code unless otherwise stated.
[**] See footnote *, ante.
[15] Hereafter "rule 3-300."
[16] Such liens are often referred to in the case law and literature as "charging" liens and we will use that term here.
[17] Restatement Third of The Law Governing Lawyers, section 43, subdivision (2)(a).
[18] California State Bar Standing Committee on Professional Responsibility and Conduct (1981) Formal Opinion No. 1981-62 (1981 WL 27939) [hereinafter S.B. Formal Opinion No. 1981-62].
[19] San Francisco Bar Association (1997) Formal Opinion No. 1997-1.
[20] Cf. Los Angeles County Bar Association (1983) Formal Opinion No. 416 with Los Angeles County Bar Association (1999) Formal Opinion No. 496.
[21] Litman v. Fine, Jacobson, Schwartz, et al. (Fla.App.1987) 517 So.2d 88, 91.
[22] Weigel v. Grimmett (1992) 173 Wis.2d 263, 496 N.W.2d 206, 208-209.
[23] Hawk v. State Bar (1988) 45 Cal.3d 589, 247 Cal.Rptr. 599, 754 P.2d 1096.
[24] This ruling was correct. The mere fact a retainer agreement provides for a "bonus" to the attorney does not make it a contingent fee contract if the attorney's fee is based on specific hourly billing rates subject to adjustment under enumerated factors at the end of the representation. In re County of Orange (C.D.Cal.1999) 241 B.R. 212, 221.
[25] Section 6148, subdivision (a).
[26] Section 6148, subdivision (c).
[27] Section 6148, subdivision (d)(4).
[28] Isrin v. Superior Court (1965) 63 Cal.2d 153, 158, 45 Cal.Rptr. 320, 403 P.2d 728.
[29] Discussion of Rule 3-300, 23 Pt.3 West's Ann. Cal.Codes, (1996) Court Rules, page 366.
[30] See footnote 18, supra.
[31] S.B. Formal Opinion No.1981-62, 1981 WL 27939 at *1.
[32] S.B. Formal Opinion No.1981-62, 1981 WL 27939 at *3.
[33] See footnote 23, supra.
[34] Hawk v. State Bar, supra, 45 Cal.3d at page 593, 247 Cal.Rptr. 599, 754 P.2d 1096.
[35] Hawk v. State Bar, supra, 45 Cal.3d at page 600, 247 Cal.Rptr. 599, 754 P.2d 1096; emphasis in original.
[36] Hawk v. State Bar, supra, 45 Cal.3d at page 600, 247 Cal.Rptr. 599, 754 P.2d 1096.
[37] Hawk v. State Bar, supra, 45 Cal.3d at page 601, 247 Cal.Rptr. 599, 754 P.2d 1096 [referring to former rule 5-101].
[38] Hawk v. State Bar, supra, 45 Cal.3d at pages 600-601, 247 Cal.Rptr. 599, 754 P.2d 1096.
[39] Hawk v. State Bar, supra, 45 Cal.3d at page 601, 247 Cal.Rptr. 599, 754 P.2d 1096; emphasis deleted.
[40] Carroll v. Interstate Brands Corp. (2002) 99 Cal.App.4th 1168, 1173, 121 Cal.Rptr.2d 532.
[41] Hendricks v. Superior Court (1961) 197 Cal. App.2d 586, 589, 17 Cal.Rptr. 364.
[42] See Rules of Professional Conduct, rule 4-200(A) which states an attorney "shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee." This rule applies whether the fee is fixed or contingent. Rules of Professional Conduct, rule 4-200(B)(9). And see generally Civil Code section 1670.5 which authorizes a court to refuse to enforce any clause of a contract it finds to be unconscionable as a matter of law.
[43] Safine v. Sinnott (1993) 15 Cal.App.4th 614, 616, 19 Cal.Rptr.2d 52.
[44] See discussion supra at page 11.
[45] See Business and Professions Code section 6148(a)(1), (2).
[46] Haupt v. Charlie's Kosher Market (1941) 17 Cal.2d 843, 845, 112 P.2d 627.
[47] Saltarelli & Steponovich v. Douglas (1995) 40 Cal.App.4th 1, 6, 46 Cal.Rptr.2d 683.
[48] Carroll v. Interstate Brands Corp., supra, 99 Cal.App.4th at page 1173, 121 Cal.Rptr.2d 532 and cases cited therein.
[49] Weiss v. Marcus (1975) 51 Cal.App.3d 590, 124 Cal.Rptr. 297.
[50] Weiss v. Marcus, supra, 51 Cal.App.3d at pages 594 596, 124 Cal.Rptr. 297.
[51] Weiss v. Marcus, supra, 51 Cal.App.3d at page 599, 124 Cal.Rptr. 297; citations omitted.
[52] Weiss v. Marcus, supra, 51 Cal.App.3d at page 599, 124 Cal.Rptr. 297. In the present case, Fletcher alleges he has a lien for his fees on the judgment recovered by Master Washer in the underlying action; the proceeds of the judgment in the underlying action were paid to the defendants; a portion of that sum belonged to him by virtue of his lien for the reasonable value of his legal services; defendants thus became indebted to him "for money had and received by defendants for the use and benefit of plaintiff."
[53] Weiss v. Marcus, supra, 51 Cal.App.3d at page 599, 124 Cal.Rptr. 297.
[54] Weiss v. Marcus, supra, 51 Cal.App.3d at page 599, 124 Cal.Rptr. 297; citation omitted. In the present case, Fletcher alleges that by reason of his lien he was entitled to payment for his legal services from the Master Washer judgment. Defendants, with notice of his lien, deprived him of his entitlement to a portion of the judgment by obtaining possession of the entire proceeds of the judgment for themselves.
[55] Levin v. Gulf Ins. Group (1999) 69 Cal. App.4th 1282, 82 Cal.Rptr.2d 228.
[56] Levin v. Gulf Ins. Group, supra, 69 Cal. App.4th at pages 1284-1285, 82 Cal.Rptr.2d 228.
[57] Levin v. Gulf Ins. Group, supra, 69 Cal. App.4th at pages 1287-1288, 82 Cal.Rptr.2d 228.
[58] The elements of a cause of action for conversion are "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." Farmers Ins. Exchange v. Zerin (1997) 53 Cal.App.4th 445, 451, 61 Cal. Rptr.2d 707.
[59] See Heyer v. Flaig (1969) 70 Cal.2d 223, 230, 74 Cal.Rptr. 225, 449 P.2d 161.
[60] In the present case Master Washer obtained its judgment on March 11, 1999. By April 15, 1999 the entire proceeds had been distributed among the third party defendants.
[61] Levin v. Gulf Ins. Group, supra, 69 Cal. App.4th at pages 1287-1288, 82 Cal.Rptr.2d 228; Weiss v. Marcus, supra, 51 Cal.App.3d at pages 599-601, 124 Cal.Rptr. 297. But see Carroll v. Interstate Brands Corp., supra, 99 Cal.App.4th at pages 1176-1177, 121 Cal. Rptr.2d 532 criticizing "the leverage that a notice of attorney's lien gives to an attorney" because it allows the proceeds of a settlement or judgment to be "tied up until everyone involved can agree on how the money should be divided or until one or the other brings an independent action for declaratory relief." The opinion calls for legislation to expedite the determination whether the attorney has a valid lien on the judgment.
[***] See footnote *, ante.