**In re Margarita BOUZAS, Debtor.**

**William H. Broach, Trustee, Plaintiff,**

v.

**Georgia Ann Michell, Defendant.**

Bankruptcy No. 01–45022 TR.
Adversary No. 02–4883 AT.

United States Bankruptcy Court,
N.D. California.

June 19, 2003.

Elizabeth Murphy, Stromsheim & Associates, San Francisco, CA, for trustee/plaintiff.

Dennis D. Davis, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for Defendant.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

This bankruptcy case was commenced by the Debtor in the midst of a dissolution action. At the time the petition was filed, her marital relationship had been severed, but the community property had not yet been divided. Two parcels of community real property (the "Real Property") were sold prior to the commencement of the bankruptcy case, and the chapter 7 trustee in the above-captioned estate (the "Trustee") is holding the remaining proceeds of the sale (the "Sale Proceeds"). The Debtor's dissolution attorney ("Michell") claims an attorney's charging lien in the Sale Proceeds. The Trustee contends that Michell's lien does not attach to the Sale Proceeds or, if it does attach, that the lien is avoidable under 11 U.S.C. § 544(a). For the reasons stated below, the Court concludes that Michell's attorney's charging lien does not attach to the Sale Proceeds.

## SUMMARY OF FACTS

On or about September 5, 2000, the Debtor engaged Michell to represent her in a dissolution action with respect to her then husband Martin Gewing ("Gewing"). On that date, the Debtor executed a written attorney-client fee contract (the "Contract"). Paragraph 8 of the Contract provides as follows:

Client grants Ganong & Michell a lien on client's cause of action, judgment, settlement or otherwise, amount due or to be paid or that becomes due to client, for all unpaid fees, interest and for all costs advanced by GANONG & MICHELL.

Sometime thereafter, the Debtor's and Gewing's marital relationship was severed. Still later, on September 14, 2001, while the dissolution action was still pending, the Debtor filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. At the time of the filing, the community property had not yet been divided. However, the Real Property had been sold, generating net proceeds of approximately $163,000.

Initially, these funds were held by Michell in her trust account. In or about May 2001, the family court judge authorized the Debtor and Gewing each to withdraw $10,000 from the funds held in Michell's trust account. Shortly thereafter, Michell withdrew $10,000 from the trust fund and applied them to her bill, according to the Debtor without the Debtor's authorization.[1]

After the Debtor filed her bankruptcy petition and this adversary proceeding was commenced, Michell paid the remaining sale proceeds over to the Trustee. The Trustee is presently holding approximately $143,000 in net sale proceeds from the Debtor's and Gewing's real property: i.e., the Sale Proceeds.

Michell has filed a proof of claim in the bankruptcy case, claiming $101,850.83 in unpaid fees and costs. She asserts that the claim is secured by the Debtor's share of the Sale Proceeds (as ultimately deter-

---

1. Michell contends that the Debtor ratified her withdrawal of $10,000 from her trust account and its application to her bill for attorney's fees. She contends that she threatened to cease performing legal services for the Debtor if the Debtor did not do so. The Court has denied Michell's request for summary judgment in her favor on this issue. Although it appears that Michell had a se- cured claim on the $10,000 awarded to the Debtor based on her attorney's charging lien, by simply helping herself to her collateral without authorization, she still may have converted those funds. Because Bouzas has been ill and unavailable for discovery, the Trustee has been unable to determine whether there are material factual issues regarding the alleged ratification.

mined by the family law court) by virtue of the lien granted her in the Contract. The Trustee contends that the claim is either unsecured or, if secured by a contractual lien, that the lien is avoidable under 11 U.S.C. § 544(a) because unperfected by any type of public filing or notice. Michell contends that the terms of the Contract are sufficient to create an attorney's charging lien on the Debtor's share of the Sale Proceeds and that an attorney's charging lien requires no further step to be perfected.

## DISCUSSION

Section 541 of the Bankruptcy Code governs what constitutes property of the bankruptcy estate. *See* 11 U.S.C. § 541. Section 541(a)(1) provides that, with limited exceptions not relevant here, the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a)(2) provides that property of the estate also includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is-(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. § 541(a)(2).

■ Thus, even if only one spouse files the bankruptcy petition, virtually all of the community property becomes property of the estate, the nonfiling spouse's share of the community property as well as the debtor's. This is true even if the couple has had their marital relationship severed before the bankruptcy petition is filed. If the marital estate has not been divided before the bankruptcy petition is filed, all

community property that fits the description in 11 U.S.C. § 541(a)(2) is included in the bankruptcy estate. *See In re Mantle,* 153 F.3d 1082, 1085 (9th Cir.1998); *In re Miller,* 167 B.R. 202, 208 (Bankr.C.D.Cal. 1994). Assuming without deciding that the Sale Proceeds are community property, based on these principles, the Court concludes that the Sale Proceeds are property of the Debtor's bankruptcy estate in their entirety.

■ However, if the Debtor's share of the community property was subject to a lien under state law at the time the bankruptcy petition was filed, that property enters the estate subject to the lien. The lien remains on the property unless some provision of bankruptcy law permits it to be avoided. California law governs whether the Debtor's share of the community property was subject to Michell's attorney's charging lien on the petition date. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See In re Southern California Plastics, Inc.,* 208 B.R. 178, 181, n. 3 (9th Cir. BAP 1997).

■ Because the Court determines that, under California law, Michell did not have an attorney's charging lien on any portion of the Sale Proceeds at the time the Debtor filed her bankruptcy petition, the Court concludes that the Trustee is entitled to summary judgment on this issue and that Michell's request for summary judgment must fail. The Trustee's claim for avoidance of Michell's attorney's charging lien under 11 U.S.C. § 544(a) is therefore moot and should be dismissed.

■ California law governing attorney's charging liens, and their priority vis-a-vis other liens, is not seriously in dispute. Under California law, the only way an attorney may acquire an attorney's charging lien is by contract. No California statute creates such a lien nor do California

courts recognize a common law or equitable lien. *See Haupt v. Charlie's Kosher Market*, 17 Cal.2d 843, 845, 112 P.2d 627 (1941); *Carroll v. Interstate Brands Corp.*, 99 Cal.App.4th 1168, 1172, 121 Cal.Rptr.2d 532 (2002).

■ A contract may provide for an attorney's charging lien expressly or by implication, e.g., by stating that the attorney is entitled to "look to the judgment for payment for legal services rendered." *Carroll*, 99 Cal.App.4th at 1172, 121 Cal. Rptr.2d 532. An attorney's charging lien may be created by contract even though the attorney's right to the fees is not contingent on there being a recovery in the litigation. *Cetenko v. United California Bank*, 30 Cal.3d 528, 532, 179 Cal.Rptr. 902, 638 P.2d 1299 (1982).[2]

■ California law also makes it clear that an attorney's charging lien is effective as soon as the contract that creates it is executed. *Cetenko*, 30 Cal.3d at 534, 179 Cal.Rptr. 902, 638 P.2d 1299. No further step is necessary to perfect it or to establish its priority as of the date of execution over subsequently created liens in the same collateral. *Id.; Carroll*, 99 Cal. App.4th at 1175, 121 Cal.Rptr.2d 532. Thus, an attorney's charging lien is that rare creature: i.e., a legally sanctioned "secret lien." *Cetenko*, 30 Cal.3d at 532–533, 179 Cal.Rptr. 902, 638 P.2d 1299.

■ In the Ninth Circuit, an attorney's charging lien is enforceable in bankruptcy even if the judgment has not been rendered at the time the bankruptcy petition is filed. *See In re Pacific Far East Line, Inc.*, 654 F.2d 664 (9th Cir.1981). In *Pacific Far East Line*, prior to filing a petition seeking relief under chapter XI of the Bankruptcy Act (the predecessor statute to the Bankruptcy Code), the debtor entered into a contingent fee agreement with an attorney. The attorney performed substantial services pre-petition. The case was settled just after the bankruptcy filing. The attorney claimed an attorney's charging lien in the settlement proceeds under the contingent fee agreement. *Id.*

The Creditors' Committee objected, contending that the attorney had at best a general, unsecured claim for his pre-petition services and an administrative claim for his post-petition services. The bankruptcy court rejected this contention. The *Pacific Far East Line* court concluded that, under California law, an attorney's charging lien survived the bankruptcy filing. 654 F.2d at 668–670; *see also Saltarelli & Steponovich v. Douglas*, 40 Cal. App.4th 1, 5–8, 46 Cal.Rptr.2d 683 (1995) (holding that debtor/client's bankruptcy discharge did not eliminate attorney's charging lien on debtor/client's prospective recovery in lawsuit filed pre-petition).

Nevertheless, the Trustee contends that an attorney's charging lien does not constitute a secured claim under 11 U.S.C. § 506(a) or that it is avoidable under 11 U.S.C. § 544(a) because unperfected. The Trustee relies principally on *Fletcher v. Davis*, 130 Cal.Rptr.2d 696 (2003)[3] and

---

**2.** Michell has even cited one case in which a contractual attorney's charging lien was given priority over a duly perfected attachment lien on a judgment in litigation unrelated to the attorney's services. *See Bluxome Street Associates v. Fireman's Fund Insurance Co.*, 206 Cal.App.3d 1149, 1152–1159, 254 Cal.Rptr. 198 (1988). The Court questions whether this decision was correctly decided. In any event, *Bluxome* is distinguishable from the instant case since the charging lien in *Bluxome* was claimed on the proceeds of the litigation, not, as here, on the subject matter of the litigation prior to judgment.

**3.** In any event, the California Supreme Court has recently granted a petition for review of this decision. *See Fletcher v. Davis*, 134 Cal. Rptr.2d 50, 68 P.3d 343 (2003). This means that the court of appeals decision may not be

*Carroll v. Interstate Brands Corp.,* 99 Cal. App.4th 1168, 121 Cal.Rptr.2d 532 (2002). Neither case supports the Trustee's position.

In *Fletcher,* an attorney who had been discharged prior to entry of the judgment on which he claimed a lien based on an oral agreement sued for conversion when the judgment proceeds were paid to others allegedly on notice of his lien. *Id.* The principal issue was whether the attorney's lien was unenforceable because the attorney had not complied with Rule 3–300 of the California Rules of Professional Conduct. *Id.* Rule 3–300 provides that an attorney may not acquire a pecuniary interest adverse to a client unless, among other things, the client consents in writing. *See* Cal. Rule of Prof. Conduct 3–300.

The *Fletcher* court concluded that Rule 3–300 did not apply to an agreement creating an attorney's charging lien. 130 Cal. Rptr.2d at 698–702. In doing so, it distinguished *Hawk v. State Bar,* 45 Cal.3d 589, 247 Cal.Rptr. 599, 754 P.2d 1096 (1988). In *Hawk,* the California Supreme Court held that taking a deed of trust in a client's real property created an adverse interest because the deed of trust could be foreclosed without judicial scrutiny. By contrast, the *Hawk* court noted, taking an unsecured promissory note for the amount due would not create an adverse interest because, to enforce the obligation, the attorney would be required to file a lawsuit. 45 Cal.3d at 600–601, 247 Cal.Rptr. 599, 754 P.2d 1096.

The *Fletcher* court concluded that an attorney's lien was more like an unsecured promissory note than a lien created by a deed of trust. Therefore, the oral agreement for an attorney's charging lien did not violate Rule 3–300. 130 Cal.Rptr.2d at 702. However, the *Fletcher* court did not hold that the attorney's "charging lien" was unsecured. To the contrary, it upheld the lien. *Id.*

The holding in *Carroll* is wholly inapposite to the issue presented here.[4] Moreover, the following dicta in *Carroll* is contrary to the Trustee's position:

> Because a notice of lien is not necessary for the creation of a lien, the filing of a notice of lien has no effect on the priority of the attorney's lien over others. By statute, different liens on the same property have priority according to the time of their creation. [Citation omitted.] An attorney's lien is created and takes effect at the time the fee agreement is executed. [Citation omitted.] Thus, where an attorney's lien was created before the filing of an action, the attorney's lien has priority over a lien created after the action was commenced. [Citations omitted.]

99 Cal.App.4th at 1175, 121 Cal.Rptr.2d 532.

> Unlike a judgment creditor's lien, which is created when the notice of lien is filed [citation omitted], an attorney's lien is a "secret" lien; it is created and the attorney's security interest is protected even without a notice of lien. [Citation omitted.]

99 Cal.App.4th at 1172, 121 Cal.Rptr.2d 532.

The Trustee also attempts to distinguish *Pacific Far East Line* on the ground that

cited for any purpose. Cal. Rule of Court 976.

4. In *Carroll,* the issue was whether the trial court that rendered the judgment in which an attorney's lien was asserted had jurisdiction to determine whether the lien was valid and, if not, to expunge it. The *Carroll* court held that the trial court did not have jurisdiction because the attorney asserting the lien was not a party to the action. 99 Cal.App.4th at 1173–1174, 121 Cal.Rptr.2d 532.

it involved a contingent fee agreement. However, as noted above, California law makes it clear that an attorney's charging lien may be created by contract even when the fee is not contingent on there being a recovery in the underlying action.

The conclusion that Michell had a valid attorney's charging lien under California law when the bankruptcy petition was filed does not end the Court's inquiry. The critical issue is whether Michell's attorney's charging lien gave her an automatically perfected security interest in the Debtor's interest in the Real Property and thus the Sale Proceeds. Because the lien was created by the Contract, the Court looks first to the language of the Contract.

As recited above, the Contract states that Michell is given a lien to secure her fees on the Debtor's "cause of action, judgment, settlement or otherwise...." This language is clearly sufficient under California law to give Michell an attorney's charging lien in any judgment or settlement in the dissolution action. However, the Court does not read the reference to the Debtor's "cause of action" or the phrase "or otherwise" as expressing the intent to create a lien directly on the Debtor's interest in the Real Property or its proceeds prior to judgment or settlement. Thus, Michell's attorney's charging lien may only be deemed to attach to the Real Property if, under California law, an attorney's charging lien necessarily attaches to the subject matter of the underlying litigation.

The California Supreme Court has held that it does not. *See Isrin v. Superior Court of Los Angeles County,* 63 Cal.2d 153, 45 Cal.Rptr. 320, 403 P.2d 728 (1965). The issue in *Isrin* was "whether an indigent plaintiff should be denied the right to proceed in forma pauperis on the...ground that his or her attorney, who is presumably solvent, is acting under a

contingent fee contract." The answer to this question turned on the rule that in forma pauperis status should be denied if someone who was presumably financially responsible had an equal or partial interest in the subject matter of the proposed litigation. *Id.*

The Court concluded that the plaintiff should not be denied in forma pauperis status by reason of the contingent fee agreement. It concluded that the agreement merely gave the attorney an interest in the proceeds of the litigation, not in its subject matter. The Court stated as follows:

> While there is occasional language in cases in the effect that the attorney also becomes the equitable owner of a share of the client's cause of action, we stated more accurately in *Fifield Manor v. Finston* (1960) 54 Cal.2d 632, 641, 7 Cal.Rptr. 377, 383, 354 P.2d 1073, 1078, 78 A.L.R.2d 813, that contingent fee contracts 'do not operate to transfer a part of the cause of action to the attorney but only give him a lien upon his client's recovery.'

63 Cal.2d at 159, 45 Cal.Rptr. 320, 403 P.2d 728.

> In Todd the power of attorney expressly recited that the client intended it to be construed as a power 'coupled with an interest in the subject-matter thereof'; in spite of this declaration, we held the power to be revocable because it had in effect been given as security for the attorney's fee and hence created an interest in the proceeds rather than in the subject of the litigation....After Todd it followed predictably that the mere execution of a contingent fee contract gave the attorney no 'interest in the subject of the agency.' [Citations omitted.] Nor is such an interest created by a contingent fee contract in which the client 'assigns' to the attorney, as his

compensation, one-half 'of my interest, whatever that interest is now or may become,' in the litigation. [Citations omitted.] And the attorney acquires no such interest even when the contingent fee contract expressly provides that to secure his compensation he shall have 'a lien on any judgment or any amount recovered.' [Citations omitted.]

63 Cal.2d at 160, 45 Cal.Rptr. 320, 403 P.2d 728.

This language appears broad enough to apply equally to attorney's charging liens based on noncontingent fee agreements. *See also Benci–Woodward v. Commissioner of Internal Revenue,* 219 F.3d 941, 943 (9th Cir.2000) ("Under California law, an attorney's lien does not confer any ownership interest upon attorneys or grant attorneys any right and power over the suits, judgments, or decrees of their clients.")[5]

## CONCLUSION

Michell is entitled to summary judgment declaring that she has a valid attorney's charging lien on any judgment or settlement in the dissolution action and that such lien is not avoidable under 11 U.S.C. § 544(a). However, she is not entitled to a ruling that she has a valid, nonavoidable attorney's charging lien on the Sale Proceeds. Rather, the Trustee is entitled to a ruling that Michell does not have a lien of

any sort on the Sale Proceeds. The Trustee is directed to submit a proposed form of order in accordance with this decision.

---

**5.** The Contract could have provided for a lien in the Debtor's share of the community property. However, such a lien would not have constituted an attorney's charging lien. Therefore, it would not have been automatically perfected and entitled to priority based on the date of execution of the Contract. It would also have been avoidable by the Trustee under 11 U.S.C. § 544(a) if unperfected. Moreover, as the Trustee noted, to the extent that Michell had obtained and perfected a lien on the Debtor's share of the Real Property to secure her fees in the dissolution action, the lien would have been void or voidable under California law unless she first complied with § 2033 of the California Family Code. Section 2033 requires 15 days notice to the other party to the dissolution prior to recordation of such a lien to give the other party an opportunity to object to recordation. Cal. Fam.Code § 2033. Moreover, the family law court can invalidate the lien even after it is recorded to enable the other party to pay a fair share of the community obligations. Cal. Fam.Code § 2034. The attorney must also comply with Rule 3–300 of the California Rules of Professional Conduct (see discussion supra).